At IAS Part ___ of the Supreme Court of
the State of New York, held in and for the
County of Orange at the Courthouse, 285
Main Street, Goshen, New York  10924,
the __ day of August, 2019.

PRESENT: HON. _____

                Justice of the Supreme Court

---

AF TRUCKING INC d/b/a AF TRUCKING
and YIDA FALKOWITZ,

                Plaintiffs,

    -against-

BUSINESS FINANCIAL SERVICES, INC.
d/b/a BFS CAPITAL and AXOS BANK,

                Defendants.

Index No. EF002854-2019

**ORDER TO SHOW CAUSE**

Upon reading the annexed affidavit of Michael B. Smith, dated August 15, 2019, including all of the exhibits thereto, and upon all prior pleadings and proceedings had herein:

LET Plaintiffs AF Trucking Inc. d/b/a AF Trucking and Yida Falkovitz or their attorney show cause before this Court at Courtroom ___ of the Supreme Court of the State of New York, 285 Main Street, Goshen, New York, on the ____ day of September, 2019, at _____ p.m./ a.m., or as soon thereafter as counsel may be heard, why an Order should not be entered:

    (a) pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, staying the above-captioned action in favor of arbitration;

    (b) pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, compelling Plaintiffs to arbitrate their claims as required by Section 21 of the Promissory Note attached to the Complaint as Exhibit A;

(c) pursuant to Rule 130.1-1, ordering Plaintiffs to reimburse Defendants for their

expenses and attorney's fees incurred in connection with this application; and

(d) granting such other and further relief as the Court deems just and proper; and it is

further

ORDERED that, pending hearing and determination of this motion, good cause having

been shown, all further proceedings in the above-captioned action be and hereby are stayed,

pursuant to CPLR § 2201; and it is further

ORDERED that answering papers, if any, shall be served by overnight mail and email to

Defendants' counsel – Lupkin PLLC, 80 Broad Street, Suite 1301, New York, NY 10004,

msmith@lupkinpllc.com – so as to be received by the ___ day of August, 2019; and it is further

ORDERED that reply papers, if any, shall be served by overnight mail and email to

Plaintiffs' counsel – Levenson Law Group, 9 North Mill Street, Nyack, NY 10960,

levensonlawgroup@gmail.com – so as to be received by the ___ day of September, 2019; and it

is further

ORDERED that service of a copy of this Order, together with the papers upon which it is

based, upon Plaintiffs' counsel – Levenson Law Group, 9 North Mill Street, Nyack, NY 10960,

levensonlawgroup@gmail.com – by overnight mail and email so as to be received by the ___

day of August, 2019, shall be deemed good and sufficient.

ENTER:

_____

J.S.C.

4838-1606-7744, v. 1

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

---

AF TRUCKING INC d/b/a AF TRUCKING
and YIDA FALKOWITZ,

Plaintiffs,

-against-

BUSINESS FINANCIAL SERVICES, INC.
d/b/a BFS CAPITAL and AXOS BANK,

Defendants.

Index No. EF002854-2019

**AFFIRMATION OF
MICHAEL B. SMITH
IN SUPPORT OF
ORDER TO SHOW CAUSE**

---

MICHAEL B. SMITH, an attorney duly admitted to the practice of law in the State of

New York, hereby states under the penalties of perjury:

1.  I am an attorney at the firm of Lupkin PLLC, counsel for defendants Business

Financial Services, Inc. d/b/a BFS Capital ("BFS") and Axos Bank ("Axos" and, together with

BFS, "Defendants") in this matter. I respectfully submit this Affirmation in support of

Defendants' motion for an order (1) staying the above-captioned action in favor of arbitration, (2)

compelling plaintiffs AF Trucking Inc. d/b/a AF Trucking ("AFT") and Yida Falkovitz[1]

("Falkovitz" and, together with AFT, "Plaintiffs") to arbitrate this dispute, and (3) requiring

Plaintiffs to reimburse Defendants for their expenses and attorneys fees  in connection with this

application.

2.  I state the following based on personal knowledge as to my own actions and on

information and belief as to all other matters.

---

[1] Although Mr. Falkovitz's last name is spelled with a "w" in the Complaint, it is spelled with a
"v" on his New York State driver license.

3.      Defendants ask this Court to stay this action and compel arbitration because Plaintiffs' claim arises out of an agreement that contains a broad, compulsory arbitration provision requiring that any and all disputes, claims, or controversies arising out of or in connection with the agreement be decided exclusively and finally by binding arbitration:

> Any and all disputes, claims or controversies by any party hereto (including any Guarantor), arising out of or in connection with this Agreement or the interactions of the parties with each other, no matter how described, pleaded or styled, including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration. However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole).

4.      Defendants also seek reimbursement of their expenses and attorney's fees in connection with this application because, but for the frivolous conduct of Plaintiffs and their counsel, Defendants would not have had to make this application.

## **BACKGROUND**

5.      On or about March 7, 2019, Plaintiffs signed a promissory note with Axos (the "Agreement"). AFT is the borrower on the note and Falkovitz personally guaranteed the loan. On or about March 18, 2019, Axos sold the note to BFS, the current holder of the note.

6.      On July 31, 2019, Plaintiffs served the Complaint in this action on both Defendants. The Complaint asserts a single cause of action, which seeks a declaration that the Agreement is void and an order barring Defendants from enforcing the Agreement.

7.      A copy of the Complaint is attached hereto as Exhibit 1; the Agreement is Exhibit A to the Complaint.

8.      The Complaint is replete with allegations that the parties entered into one or more "merchant cash advance agreements"—allegations which Plaintiffs' counsel has conceded are

2

untrue. *See, e.g.,* Complaint ¶¶ 5, 21-23, 29, 30, 35, 36, 41-76. The Complaint also contains at least 17 supposed quotes from the parties' agreement, none of which appears in the Agreement. *See, e.g., id.* ¶¶ 12, 21, 22, 44, 45, 48, 59, 60, 62-66, 68, 71, 73, 74.

9.       Other than on the caption page, the Complaint does not mention either of the Defendants in this case. Instead, it refers to an entity called "Cash Advance Funders". *See id.* ¶ 21. Evidently, Plaintiffs' counsel took a complaint directed at a third party, based on an agreement or agreements entirely different from and unrelated to the Agreement between the parties to this action and simply added Defendants' names to the top.

10.       On August 2, 2019 I sent Plaintiffs' counsel, Scott Levenson, a letter explaining that (a) the Complaint contained numerous false and irrelevant allegations and (b) section 21 of the Agreement (the "Arbitration Provision") requires Plaintiffs to submit their claims to arbitration. A copy of that letter is attached hereto as Exhibit 2.

11.       On August 4, 2019, Mr. Levenson sent me a draft Amended Complaint from which the allegations regarding merchant cash advance agreements and the non-existent quotations had been removed. He stated that the amended pleading would "go out for service immediately." A copy of Mr. Levenson's email and the draft Amended Complaint is attached hereto as Exhibit 3.

12.       Regarding the Arbitration Provision, Mr. Levenson stated only that "the underlying agreement states as follows: 'However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision'."

13.       As I advised Mr. Levenson on August 5, 2019, the second half of that sentence, which he did not quote, makes clear that the court may hear only disputes regarding the

3

enforceability of the Arbitration Provision itself, *not* disputes regarding the validity of the Agreement *as a whole*:

> Any and all disputes, claims or controversies…shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration. However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision *(as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole)*.

I asked Mr. Levenson to identify any specific challenge Plaintiffs assert to enforceability of the Arbitration Provision (as opposed to the Agreement as a whole). A copy of my August 5, 2019 email to Mr. Levenson is attached hereto as Exhibit 4.

14.     Once confronted with the fallacy of Plaintiffs' position, Mr. Levenson ceased communication with my firm.

15.     On August 12, 2019, I again wrote to Mr. Levenson asking him to identify a challenge to the Arbitration Provision or dismiss the action.

16.     On August 14, 2019, I advised Mr. Levenson that Defendants would be filing this motion and asked him to stipulate to an interim stay.

17.     As of the time of filing of this Affirmation, I have received no communication from Plaintiffs' counsel since August 4, 2019.

## ARGUMENT

18.     The Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*:

> The Federal Arbitration Act shall govern the interpretation, implementation and enforcement of this Arbitration Provision to the fullest extent possible, to the exclusion of all otherwise potentially applicable state law, regardless of the location of the arbitration proceedings or the nature of the disputes or controversies between the parties to this Agreement.

Agreement § 21.

4

19.     "Congress adopted the Act to insure that the courts would rigorously enforce private agreements to arbitrate and it establishes an 'emphatic' national policy favoring arbitration which is binding on all courts, State and Federal." *Singer v. Jefferies & Co., Inc.*, 78 N.Y.2d 76, 81 (1991) (citations omitted). State and federal courts have concurrent jurisdiction under the FAA. *GAF Corp. v. Werner*, 66 N.Y.2d 97, 104-105 (1985); *Southland Corp. v Keating,* 465 U.S. 1, 12 (1984).

20.     "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA's strong policy in favor of arbitration is "even stronger where the arbitration clause itself is a broad clause that refers to arbitration of all disputes arising out of an agreement." *Clarendon Nat. Ins. Co. v Lan*, 152 F. Supp. 2d 506, 514 (S.D.N.Y. 2001) (internal quotation marks omitted).

21.     Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

22.     Section 4 of the FAA provides, in relevant part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

court[2]…for an order directing that such arbitration proceed in the manner provided for in such agreement…. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court **_shall_** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added).

23.     There is no question that Plaintiffs' action, which seeks a declaration that the

Agreement (as a whole) is void and an order barring Defendants from enforcing all provisions of

the Agreement, is a claim referable to arbitration under the broad Arbitration Provision:

> Any and all disputes, claims or controversies by any party hereto (including any Guarantor), arising out of or in connection with this Agreement or the interactions of the parties with each other, no matter how described, pleaded or styled, including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration. However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole).

Agreement § 21.

24.     Plaintiffs' position appears to be that, because they have challenged the

enforceability of the Agreement *as a whole*, the Arbitration Provision is not enforceable against

them. That position is contrary to the applicable law.

25.     In *Nitro-Lift Technologies, LLC v Howard,* 568 U.S. 17 (2012), the U.S. Supreme

Court addressed the question of who—court or arbitrator—decides such issues. The Court held

that, by adjudicating the claim rather than allowing the arbitrator to decide whether the

agreement as a whole was valid and enforceable, the state court "ignored a basic tenet of the

[FAA's] substantive arbitration law." *Id.* at 18; *accord, Rent-A-Center, West, Inc. v Jackson*, 561

---

[2] State courts are likewise empowered and obligated to compel arbitration pursuant to section 4. *See GAF Corp., supra,* 66 N.Y.2d at 105.

6

U.S. 63, 70 (2010) ("[A] party's challenge…to the contract as a whole[] does not prevent a court form enforcing a specific agreement to arbitrate.").

26.     This principle is expressly codified in the Arbitration Provision itself, which specifically excludes "questions about the validity, enforceability, coverage or scope of [the Agreement] as a whole" from the issues that can be resolved by the court. "[W]here a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration." *Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 26 N.Y.3d 659, 675-76 (2016) (citing *Rent-A-Center, West, Inc. v. Jackson* 561 U.S. 63, 71-72 (2010) ("unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA] and must enforce it…leaving any challenge to the validity of the Agreement as a whole for the arbitrator.")).

27.     The Arbitration Provision also incorporates by reference the AAA Commercial Arbitration Rules[3] and the JAMS Streamlined Arbitration Rules,[4] each of which also expressly delegates to the arbitrator the power to determine the existence, scope, or validity of a contract of which the arbitration provision forms a part. *See* AAA Rule R-7; JAMS Rule 8. That incorporation constitutes "clear and unmistakable evidence" of the parties' intent to delegate questions of existence or validity to the arbitrator, which must be enforced pursuant to Section 2 of the FAA. *Lapina v. Men Women N.Y. Model Management Inc.*, 86 F.Supp.3d 277, 286-87 (S.D.N.Y. 2015).

---

[3] https://adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf
[4] https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_streamlined_arbitration_rules-2014.pdf

7

28.     For the foregoing reasons, Defendants respectfully request that the Court enter an order staying this action and compelling Plaintiffs to arbitrate their claims pursuant to section 21 of the Agreement.

## REQUEST FOR INTERIM RELIEF

29.     Defendants' time to answer or otherwise respond to the Complaint pursuant to CPLR § 3012(a) runs on August 20, 2019. Plaintiffs' counsel represented that he would serve an Amended Complaint but has not done so. Absent an interim stay, Defendants would be required to file a motion to dismiss that would, in all likelihood, be mooted—either by an order granting Defendants' motion to stay the case or by Plaintiffs' amended pleading. Defendants already have been forced to needlessly expend resources due to Plaintiffs' intransigence, and it would be inequitable to require Defendants to expend additional resources litigating this case until this Court determines whether Plaintiffs' claims can be heard by this Court or must be arbitrated.

## REQUEST FOR SANCTIONS

30.     22 NYCRR § 130-1.1 permits the court, in its discretion, to "award to any party or attorney…costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees resulting from frivolous conduct as defined in this Part," and/or "impose sanctions upon any party or attorney …who engages in frivolous conduct…." 22 NYCRR § 130-1.1(a).

31.     For these purposes, conduct is "frivolous" if:

(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;

(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or

8

(3) it asserts material factual statements that are false.

22 NYCRR § 130-1.1(c). Plaintiffs conduct has been frivolous under all three of these definitions.

32.     As set forth above, the Arbitration Provision unambiguously requires the parties to arbitrate this dispute, regardless of whether Plaintiffs challenge the enforceability of the Agreement as a whole. I specifically alerted Plaintiffs' counsel to the Arbitration Provision on August 2, 2019 (*see* Exhibit 3) and again on August 5, 2019 (*see* Exhibit 4), when I also referred him to the Court of Appeals' decision in *Monarch Consulting*, *supra.* Because Plaintiffs do not challenge the enforceability of the Arbitration Provision *per se*, Plaintiffs' position that this dispute is not arbitrable is "completely without merit in law" and has needlessly forced Defendants to make this application for a stay and to compel arbitration.

33.     As Plaintiffs' counsel has conceded, the operative complaint contains untrue allegations. *See* Exhibit 4. Compounding this, Plaintiffs' failure to withdraw that pleading after those allegations were brought to their attention has forced Defendants to seek an emergency interim stay to avoid having to respond to the plainly frivolous complaint.

34.     Plaintiffs' refusal to abandon their frivolous position and frivolous pleading, as well as Plaintiffs' counsel's refusal to respond to or otherwise communicate with Defendants' counsel, can only have been intended to harass Defendants within the meaning of 22 NYCRR 130-1(c)(2) by needlessly forcing them to incur attorney's fees.

35.     Accordingly, Defendants respectfully request that the Court order Plaintiffs to reimburse Defendants for their expenses and attorney's fees incurred in connection with this application and impose such other or further sanctions, if any, as this Court deems necessary to deter similar conduct in the future.

9

36.     At 2:34 p.m. on Wednesday, August 14, 2019 (yesterday), I sent Mr. Levenson an

email advising him that we would be appearing before this court today at 2:30 p.m. to seek an

interim stay pending resolution of our order to show cause. A copy of that email is attached

hereto as Exhibit 5.

37.     No prior application has been made for the relief sought herein.

Dated:  New York, New York
        August 15, 2019

_____
Michael B. Smith

4850-1026-5248, v. 1

10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-----------------------------------------------------------------X

AF TRUCKING INC d/b/a AF TRUCKING. and
YIDA FALKOWITZ,

                Index No. _____

                Plaintiffs,

-against-

BUSINESS FINANCIAL SERVICES, INC. dba       COMPLAINT FOR
BFS CAPITAL and AXOS BANK                    DECLARATORY AND
                Defendants.      INJUCTIVE RELIEF

-----------------------------------------------------------------X

**TO THE SUPREME COURT OF THE STATE OF NEW YORK:**

Plaintiffs, AF TRUCKING INC. and YIDA FALKOWITZ, by and through their attorneys,

THE LAW OFFICES OF SCOTT LEVENSON, ESQ., as and for their Complaint for Declaratory

Relief against Defendants, allege and states as follows:

### THE PARTIES

1. Plaintiff, AF Trucking, Inc, (Plaintiff AF), is now, and at all times relevant hereto has

    been, a New York Corporation with a principal place of business at 3 Volova Rd., Unit

    302, Monroe, NY 10950.

2. Plaintiff, Yida Falkowitz, (Plaintiff Falkowitz) is an individual who maintains a place of

    business at 3 Volova Rd., Unit 302, Monroe, NY 10950.

3. Defendant, BUSINESS FINANCIAL SERVICES, INC. ("BFS") is upon information and

    belief, a valid corporation with a principal place of business at 3301 N. University Drive,

    Suite 300, Coral Springs, Florida, 33065

4. Defendant, Axos Bank ("Axos"), is upon information and belief, a valid corporation with

    a principal place of business at 4350 La Jolla Village Dr, Suite 140 San Diego, CA

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM

NYSCEF DOC. NO. 1

INDEX NO. EF002854-2019

RECEIVED NYSCEF: 08/15/2019

Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 14 of 59

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM

NYSCEF DOC. NO. 2

INDEX NO. EF002854-2019

RECEIVED NYSCEF: 04/11/2019

## FACTUAL BACKGROUND

5. Plaintiff and Defendants entered into a Merchant Agreement on or about March 7, 2019 and attached hereto as Exhibit "A.".

6. On page 3 and attached hereto separately as Exhibit "B." Plaintiff agreement is titled "Secured Promissory Note" ("SPN").

7. The Agreement provides the loans as follows: Principal Amount: $70,100.00; Repayment Amount: $98,841.00; Processing Fee: $475.00; Origination Fee $1,051.50; Payment Frequency: Daily; Payment Amount: $393.00; **Factor Rate: 1.41.**

8. Defendants' have demanded payment in full according to the terms of the Agreement from the Plaintiffs.

9. Plaintiff has made said payments up and until its decision to file this Complaint.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT

#### Declaratory Judgment

10. Plaintiff repeats and realleges all allegations of the Complaint as if set forth at length herein.

11. " 'The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed'. (CPLR 3001)" Long Island Lighting Company v. Allianz Underwriters Insurance Company, 35 A.D.3d 253 (2006)

12. Even though the Agreement purports to provide the Defendant with a percentage of the "future receipts" of the Plaintiff, the Defendant never requested or received any part of the Plaintiffs' future receipts.

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS  Document 1-5  Filed 08/30/19  Page 15 of 59
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
NYSCEF DOC. NO. 2
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

13. Instead, the Defendant has treated the terms of the Agreement as a loan; the terms of which have an interest rate that exceeds 25%.

14. N.Y. Gen. Oblig. Law § 5-511 provides that usurious contracts are void. A loan from and to a corporation with an interest rate that exceeds 25% constitutes criminal usury under New York law.

15. As such the Agreement constitutes criminal usury and is void ab initio.

16. "The 'present judicial interpretation' the amendment intended to reflect was the interpretation we affirmed in *Curtiss v Teller* (157 App Div 804, *affd* 217 N.Y. 649, *supra*), namely, that a usurious transaction is void *ab initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan (*see*, *id.*, p 817). Consequently, although defendants need not return the lawful interest plaintiff has already paid, they cannot recover either the money loaned or the interest remaining due in this transaction." *Szerdahelyi v. Harris*, 67 NY 2nd 42, 50-51 (1986)

17. As stated immediately above, the Defendant should not be able to "recover either the money loaned or the interest remaining due in this transaction." *Id.*

18. "When a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." *Id.*

19. With respect to any loan or forbearance other than certain residential mortgage loans, the term 'interest,' for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1  Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 16 of 59  INDEX NO. EF002854-2019
NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
NYSCEF DOC. NO. 2
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); *see* N.Y. Gen. Oblig. Law § 5-501(2).

20. New York State Penal Law §§ 190.40 and 190.42 prohibit loans with interest exceeding twenty- five percent (25%) per year. Violating those proscriptions are class E and C felonies, respectively.

21. Cash Advance Funders understands fully the Penal Law's usury proscriptions and, to avoid those proscriptions, is in the business of knowingly reaping usurious gains from loans by disguising such a loan as a purported purchase of accounts receivable. DEFENDANT's term such loans as "merchant cash advance agreement" or "Merchant Cash Advance Agreements for the Purchase and Sale of Future Receivables".

22. The "merchant cash advance agreements", however, state that each agreement is a "Revenue Based Factoring (RBF/ACH) Agreement." Factoring refers generally to loans made against a company's accounts receivable.1

23. A "merchant cash advance agreement" is not a sale of accounts receivable, but a loan subject to Penal Law §§ 190.40 and 190.42.

24. Defendant all pertinent times, continuing through the present, engaged in interstate commerce by making loans, including those which are the subject of this action, to entities in various states, and collecting or attempting to collect upon those loans.

25. DEFENDANT is in the business of making and collecting usurious loans because lending at interest rates exceeding twenty-five percent (25%) per year (in this matter the loans and broker fees exceed an annual rate of 200% and in this case 300%, and trying to enforce those agreements, is its trade.

26. Each form loan was prepared exclusively by the Plaintiff and not by the Merchants.

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM

NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 17 of 59 NYSCEF: 08/15/2019

INDEX NO. EF002854-2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM

NYSCEF DOC. NO. 2

INDEX NO. EF002854-2019

RECEIVED NYSCEF: 04/11/2019

27. ("[A] factor [is] a company that lends money to others on the security of their accounts receivable."); Hamilton Capital VII, LLC v. Khorrami, LLP, 2015 N.Y. Misc. LEXIS 2954, at 1–2 (Sup Ct. NY Co. Aug. 17, 2015) (lender "essentially functions as a factor; that is, it lends money... and the loans are secured by the [borrower's] accounts receivable"

28. Merchants entered into the loans while unrepresented by counsel.

29. The Loan Agreements' Terms intentionally mask that a "merchant cash advance agreement" is a usurious loan, the "merchant cash advance agreements," among other things, nowhere state an interest rate.

30. Nor do the "merchant cash advance agreements" refer to a principal amount loaned or to a repayment amount. Rather, because the "merchant cash advance agreements" purport to be purchases of accounts receivable in order to knowingly obtain gains which are usurious under New York law, including Penal Law §§ 190.40 and 190.42, the principal amount borrowed under a "merchant cash advance agreement" is called the "Purchase Price."

31. The "Purchase Price" must then be repaid, plus (usurious) interest to Plaintiff over several months.

32. The "Purchase Price" is stated on the first page of a "merchant cash advance agreement."

33. The reason the term "Purchase Price" is used is to intentionally create the false legal assertion that the agreement is not a loan, but a sale of accounts receivable.

34. Moreover, a merchant is always told an agreement is a loan. It is only if a merchant's future business declines, and thus it cannot make per-business day repayments, that a

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1  Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 18 of 59  INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019
INDEX NO. EF002854-2019
FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/11/2019

merchant potentially would want to adjust repayment amounts, in which case a true-up right is already permanently lost.

35. Although the true up hypothetically makes the term of a "merchant cash advance agreement" uncertain or indefinite, subsequent sections of Plaintiffs "merchant cash advance agreement" independently negate that hypothetical outcome.

36. Indeed, those subsequent "merchant cash advance agreement" provisions make the true up illusory because an uncertain or indefinite time frame is forbidden. It would mean that Plaintiff should be indicted for its action and so should it mean when they enforce the judge of such a highly usurious loan upon an individual.

37. The business, and its principal who has made and delivered a personal guaranty, are the ones exclusively bearing a business failure risk.

38. Plaintiff require a personal guaranty from Merchants and a security agreement creating a security interest in all of the corporate plaintiffs' assets, in order to secure loan repayment.

39. Under no circumstances could a borrower rightfully be relieved of that repayment obligation pursuant to the terms of a DEFENDANT "Loan agreement."

40. Among other things, because commissions, origination fees, and similar charges count towards usury, under each of its "agreements" DEFENDANT in fact is guaranteed interest exceeding 200% upon full repayment. Even without those fees, gains exceed 167% per annum because DEFENDANT's "agreement" which are the subject of this action must be repaid in about two, three, or six months.

41. Other "Merchant Cash Advance Agreement" Terms Evidencing that DEFENDANT's Intentionally Made Loans That It Knows is Usurious

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 15
Case 7:19-cv-08149-CS    Document 1-5    Filed 08/30/19    Page 19 of 59
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
NYSCEF DOC. NO. 2
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

42. DEFENDANT's under the "merchant cash advance agreements" purports to purchase accounts receivable. But terms of the "merchant cash advance agreements," such as the following, belie that assertion and reinforce that such agreement is a loan.

43. DEFENDANT does not collect the receivables it purports to have purchased contrary to the operation of most factoring businesses.

44. The borrower under the "merchant cash advance agreements" collect the very receivables "sold"; notwithstanding that DEFENDANT purports to be the "absolute owner" of the receivable, and purports that it "has purchased and shall own all" of the merchant's receivables.

45. It also cannot be credited that the "Purchase Price" is the "fair market value" of a merchant's accounts receivable, as the "merchant cash advance agreement" claims, because the "Receipts Purchased Amount" is about 200% greater than the "future" receivables purchased after subtracting all the Originating, Processing, shipping and handling fees Defendant has added to its calculations.

46. As a matter of fact, those future receivables do not even exist at the time of purchase.

47. Furthermore, many of the business DEFENDANT lends to do not even have receivables in their line of work not the least of which includes Defendants business operation.

48. Each merchant cash advance agreement refers to itself as a "Factoring" Agreement.

49. Factoring refers generally to loans made against a company's accounts receivable.

50. A true accounts receivable purchaser would want information about specific receivables purchased and the underlying obligors, to vet its risk. Here, because there is no such risk (and no real purchase), nowhere does DEFENDANT grant itself a right to first approve a sale or otherwise affect the risks it purports to acquire. Reason: DEFENDANT has made

Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 20 of 59

a loan repayable absolutely, secured by all of the borrower's assets and a personal guaranty.

51. This Fraud is so deeply entrenched in the fiber of their operations so-much-so that DEFENDANT does not have any department that is tasked with reviewing receivables of any sort other than the Merchant's bank Statements.

52. Were a "merchant cash advance agreement" truly a sale, i.e., a title transfer in exchange for money, there would be no need for a security agreement for want of a future obligation to secure. Upon making payment to a plaintiff, the defendants would gain title to the thing purchased -- here, title to accounts receivable -- and the transaction would be concluded.

53. The purchaser then would move forward from the concluded transaction independent of the Merchants by, among other things, realizing upon the very assets purchased by collecting receivables from account debtors, and bearing the risk of loss in the event of non- payment.

54. DEFENDANT does none of these things under the "Loan agreements". Instead of moving forward from a concluded title transfer, the DEFENDANT never acquired (much less collect) the receivables (the "seller" still collects them) and cash repayment from the "seller" is due (plus usurious interest).

55. The "merchant cash advance agreements" contain security agreements. A security agreement is consistent with a loan, not a completed title transfer.

56. Also inconsistent with a sale is that guaranties made by the merchant in the agreement support future obligations imposed upon the "seller" (not a one-time title transfer).

57. The security agreement, among other things, secures a merchant's "payment" obligations to DEFENDANT.

58. Paying an amount owed or "repayment" amount, refers to a loan obligation, not selling a receivable.

59. The security agreements also refer to the agreement as a "Factoring Agreement." Factoring refers generally to a loan.

60. The security agreements also address obligations owed by "acceleration or otherwise."

61. Purchase of a future receivable (a thing that exists only in the future), of course, cannot be accelerated; but acceleration is archetypical loan language.

62. The guaranties, consistent with a loan only, state that they are invoked when a merchant "fails to make a payment." Payments, of course, are things done to repay a loan. Selling a receivable is not a "payment."

63. Moreover, DEFENDANT may seek recovery under a guaranty without first seeking to "obtain payment from Merchant." Obtaining payment from a receivables seller is nonsensical; but is fully consistent with obtaining payment from a borrower under a loan.

64. Additionally, the guaranties' terms refer to the prospect that a borrower may do a "sale or other disposition of any collateral securing the Guaranteed Obligations."

65. In fact, the guaranties make clear they apply, in their words, to "Merchant's failure to pay timely any amount owed under the Merchant Agreement."

66. It also makes statements such as "payment under this Agreement" by the merchant, the merchant's obligations having to be "paid in full" and to "amounts paid" or an "amount paid" by the merchant or guarantor each of which payment references may reasonably refer to a loan only.

67. Had DEFENDANT actually purchased accounts receivable, there would be no need to address those assets' sale because title to those assets would have already been vested with DEFENDANT.

68. Another Point: The guaranties too refer to the lender's rights to "renew, extend, or otherwise modify the advance agreement.

69. A sale, of course, would be a one-time event, whereas renewing, extending, or modifying language may reasonably refer only to a loan.

70. Furthermore, the loan agreements, further evidencing a loan only, discuss at length repayment terms and conditions. But repayment of the purchase price (plus interest) is the opposite of a sale.

71. In addition, DEFENDANT also grants to itself the right to investigate a merchant's "financial responsibility and history."

72. Were a "merchant cash advance agreement" truly an accounts receivable purchase, DEFENDANT would be concerned with an underlying account debtor's financial responsibility and history, because that entity would be the source of payment. Nowhere do the "merchant cash advance agreements" concern an account debtor, because the borrower must make repayment to DEFENDANT absolutely.

73. The "merchant cash advance agreements" underscore the importance to DEFENDANT of the seller's (borrower's) "credit standing" and "business conduct," and attempts to vest with DEFENDANT the right to report upon such things to credit reporting bureaus.

74. Likewise, the lender required representations as to the plaintiffs' financial condition, and imposed a "continuing, affirmative obligation" upon the plaintiffs to advise of any "material… change in its financial condition, operation or ownership," together with

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 23 of 59 NYSCEF: 08/15/2019
INDEX NO. EF002854-2019
FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
NYSCEF DOC. NO. 2
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

reserving the right to request a Merchant's bank statements at any time during the performance of this Agreement."

75. Were a "merchant cash advance agreement" truly an accounts receivable sale, the underlying account debtor's credit standing and business conduct would be paramount.

76. "When a party contemplates taking certain action a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures. In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly. That is the theory of the declaratory judgment action authorized by CPLR 3001." *New York Public Interest Research Group v Carey*, 42 **N.Y.2d** 527, 529-530 (1977)

77. Plaintiff has a secured promissory note and its loan is deemed financially secured by the personal assets of the borrower and AF Trucking, Inc.

> **WHEREFORE,** Plaintiff demands declaratory judgment against Defendant:
>
> A. Determining that the agreement along with any other documents signed by Plaintiff are deemed usurious on its face and be deemed void barring Defendant from further collection of any outstanding debt; and
>
> B. Preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the agreement and or documents signed until this matter is decided by this court in its entirety; and

C. Alternatively, preliminarily and permanently enjoin Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from collecting on any "judgements" should they be granted to Defendant in any other court, until this matter is further adjudicated; and

D. Award Plaintiff's their costs and reasonable attorneys' fees in this action; and

E. This court retain jurisdiction over this matter for purposes of ensuring Defendant's compliance with the Court's order; and

F. Granting Plaintiff such other relief as this Court may deem just and proper.

Dated:   Nyack, New York
         April 3, 2019

LEVENSON LAW GROUP

*/s/ Scott Levenson*
By:  Scott Levenson, Esq.
Attorney for Plaintiff
9 North Mill Street
Nyack, NY  10960
(347) 352-2470
Levensonlawgroup@gmail.com



March 07, 2019

Dear Yida Falkovitz,

Thank you for your interest in a Business Loan provided through Business Financial Services, Inc. DBA BFS Capital and its affiliates, a premier provider and servicer of financing to small businesses nationwide.

After all conditions for the funding have been met, you will receive a phone call from our office to verify the terms and conditions of the Agreement.

Please read the attached documents thoroughly. If you have any questions, please do not hesitate to contact your representative.

As soon as you provide the information requested (listed below if applicable), and return the executed documents, your file will be reviewed for funding. We strive to accomplish this with the information provided and the items listed below; however in some instances we may require additional items.

Thank you,

Saraa Ferouz
Business Financial Services, Inc. DBA BFS Capital
Telephone: 954-509-5360
Fax: 888-398-2104
Email: SFerouz@bfscapital.com

Any additional information we need to expedite processing of your application is indicated below:
– A site inspection of your premise(s) may be required. If so, a third party will be contacting you.

*Business Loan Cover Letter Rev. 10/2018*

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
INDEX NO. EF002854-2019

NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 26 of 59 NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
INDEX NO. EF002854-2019

NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 04/11/2019



**bfs capital**
champions of small business™

**GENERAL AUTHORIZATION**

Yida Falkovitz
**Business Owner(s)/Principal(s):**

AF Trucking Inc. DBA AF Trucking
**Legal Name of Business / DBA:**

As identified above: I/ we (Business Owner(s)/Principal(s)) hereby authorize the **release of any and all information** pertaining to my/our business (Legal Name of Business / DBA), as requested **by Business Financial Services, Inc.** DBA BFS Capital or any of their affiliates, agents, assigns, representatives, in **connection with my/our application.**

This General Authorization also serves as instruction to any person to release **the requested information, including** but not limited to: deposit accounts, merchant accounts, payment **cards processing accounts, credit** references/verifications, payment history, balance, status, etc.

The undersigned hereby consent(s) to Business Financial Services, Inc. DBA **BFS Capital to obtain and use non-**business consumer credit reports on the undersigned in order to further evaluate **the undersigned as principal(s),** member(s), partner(s), proprietor(s) and/or guarantor(s) and to obtain and use **business information from, but not** limited to, credit report bureaus, Dun & Bradstreet or its equivalent, public records, **UCC or PPSA Holders, banks,** financial institutions, landlords, vendors, suppliers, etc.

I/we attest that the information submitted in the application is correct to the best **of my/our knowledge and has been** submitted voluntarily.

A photocopy or facsimile of this authorization shall be deemed to be the equivalent **of an original.**

You consent that your electronic signature on agreements and documents has **the same legal and moral effect as if** you signed such agreements and documents in ink, and will be deemed valid, **authentic, enforceable and binding.**

_Yida Falkovitz_ (DocuSigned by)

| | |
|---|---|
| Owner/Principal Signature | Yida Falkovitz |
| **Dated this 7 day of March, 2019** | **Owner/Principal Name Printed** |

AF Trucking Inc. DBA AF Trucking
**Business Name**
3 Volova Road , Monroe, NY 10950
**Physical Address**
910-359-2065
**Business Phone**

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1  Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 27 of 59  NYSCEF: 08/15/2019
INDEX NO. EF002854-2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
INDEX NO. EF002854-2019
NYSCEF DOC.
DocuSign Envelope ID: 41076D85-A016-4B61-8670-538EC9805FAB
RECEIVED NYSCEF: 04/11/2019

## SECURED PROMISSORY NOTE
### AXOS Bank

AF Trucking Inc. DBA AF Trucking

**Company**

| | |
|---|---|
| 3 Volova Road , Monroe, NY, 10950 | NY |
| **Principal Place of Business** | **State of Organization** |

Yida Falkovitz

**Guarantor(s)**

09/26/1991

**Guarantor(s) Date of Birth**

3 Volova Road, Monroe, NY 10950

**Guarantor(s) Addresses**

| TD Bank / | 4347104492 / | 026013673 / |
|---|---|---|
| **Bank Name** | **Bank Account Number** (the "Business Account") | **Bank Routing Number** |
| $70,100.00 | $98,841.00 | $475.00 | $1,051.50 |
| **Principal Amount** Daily ACH Fixed | **Repayment Amount** | **Processing Fee** | **Origination Fee** |
| | $393.00 | 1.4100 | |
| **Payment Frequency:** Daily/Weekly | **Payment Amount** | **Factor Rate** | |

---

### Higher Cost Loan

This loan is a higher cost loan than loans which may be available through other sources. Before signing you should fully consider all costs and fees associated with this loan.

**Please note:**

By signing this Promissory Note you will be accepting certain legal and financial obligations and waiving certain legal rights. You are, therefore, advised to consult with an attorney, and such other professional advisors as you deem appropriate, regarding the legal, financial and tax consequences of entering into the transaction contemplated by this Secured Promissory Note prior to executing any document in connection therewith.

**The remaining space on this page is intentionally left blank**

For value received, the Company hereby promises unconditionally to pay to the order of AXOS Bank, or its successors or assigns ("Holder"), in United States dollars ("Dollars" or "$") and in immediately available funds, the Repayment Amount set forth in the heading of this document, in full, as of the Maturity Date. The Repayment Amount shall be payable in the manner described below.

The Loan (defined below) contemplated by this Secured Promissory Note (the "Agreement") is being made for business purposes only. It is not being made for consumer, personal, family or household purposes. Company agrees, represents and warrants that it has requested the Loan for business purposes only, will not and shall not be used, directly or indirectly, for consumer, personal, family or household purposes and will not be used to fund dividends or distributions to its shareholders, partners, members or other owners of an equity interest in the Company.

A statement of the rights and obligations of Holder and Company, and the conditions, to which this Agreement is subject, follows:

**1. DEFINITIONS.** For the purposes of this Agreement, the following capitalized terms shall have the meaning ascribed to them below:

(i) "ACH" means Automated Clearing House; (ii) "Additional Expenses" means any costs or expenses of Holder that are designated as Additional Expenses under this Agreement; (iii) "Affiliate(s)" means, with respect to any given Person other than a partnership or limited liability company, any other Person directly or indirectly controlling, controlled by or under common control with such Person and with respect to a partnership, the partners of such partnership and with respect to a limited liability company, the members and managers of such limited liability company; (iv) "Bankruptcy Code" means the Bankruptcy Code of the United States, currently codified as Title 11, United States Code, as amended; (v) "Business Account" means the bank account identified as the Business Account in the heading of this Agreement; (vi) "Business Day" means any day that is not a Saturday, Sunday, federal holiday or a legal holiday in the State of California on which banking institutions in California are authorized or obligated by law or executive order to close; (vii) "Cannabinoid" means any of several compounds produced by marijuana plants that have medical and psychotropic effects; (viii) "Collateral" shall consist of all of the tangible and/or intangible personal property of the Company wherever located, whether now owned and hereafter acquired including, without limitation: (A) accounts, including, without limitation, Payment Card Receivables, whether now existing or created in the future; (B) chattel paper; (C) inventory; (D) equipment; (E) instruments, including, without limitation, promissory notes; (F) investment property; (G) documents; (H) deposit accounts; (I) letter of credit rights; (J) general intangibles; (K) supporting obligations; (L) proceeds and products of the foregoing; and (M) commercial tort claims; (ix) "Factor Rate" means the payment multiplier equal to the total Repayment Amount divided by the Principal Amount; (x) "Issue Date" means the earliest date on which AXOS Bank remits the Principal Amount, or any portion thereof, to, or applies the Principal Amount or any portion thereof for the benefit or on behalf of, the Company; (xi) "Lien" means any mortgage, pledge, lien, assignment, security interest or other charge or encumbrance, or any agreement to create a lien; (xii) "Marijuana Accessories" means equipment, products, devices or materials of any kind that are intended or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, ingesting, inhaling or otherwise introducing marijuana into the human body; (xiii) "Marijuana Products" means products that have been manufactured and contain marijuana or an extract from marijuana, including concentrated forms of marijuana and products composed of marijuana and other ingredients that are intended for use or consumption, including edible products, beverages, topical products, ointments, oils and tinctures; (xiv) "Maturity Date" means the date that is exactly twelve (12.00) consecutive full calendar months after the Issue Date, provided, however, that if that date is not a Business Day, then the Maturity Date shall be the Business Day immediately preceding the date that is exactly twelve (12.00) consecutive full calendar months after the Issue Date; (xv) "Payment Card Receivables" means accounts receivable owed to the Company that are generated from debit, credit and charge cards accepted by Company for payment for goods and/or services; (xvi) "Payment Date" depending on the indicated Payment frequency, means either: (A) Daily: the Business Day immediately following the Issue Date and each Business Day thereafter up to and including the Maturity Date, or (B) Weekly: the Tuesday immediately following the Issue Date and each Tuesday thereafter up to and including the Maturity Date, provided, however, that if any such Tuesday is not a Business Day then the Payment Date shall be the Business Day immediately

preceding such Tuesday; (xvii) "Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint stock company, trust or other entity or organization; (xviii) "Principal Amount" means the disbursement amount and is the loan amount; (xix) "Proceeds" means all proceeds of, and all other profits, products, rents or receipts, in whatever form, arising from the sale, exchange, assignment or other disposition of Collateral; (xx) "Repayment Amount" means the total repayment amount and includes the Principal Amount, interest and fees; (xxi) "Secured Obligations" means (A) Company's obligations under this Agreement; (B) all of Company's present and future obligations to Holder; (C) the repayment of (1) any amounts that Holder may advance or spend for the maintenance or preservation of the Collateral and (2) any other expenditures that Holder may make under the provisions of this Agreement for the benefit of Company; (D) all amounts owed by Company under any modification, renewals or extensions of any of the foregoing obligations; (E) all other amounts now or in the future owed by Company to Holder; and (F) any of the foregoing that arises after the filing of a petition by or against Company under the Bankruptcy Code, even if such obligation does not accrue because of the automatic stay under Bankruptcy Code §362 or otherwise; (xix) "Security Interest" means the security interest in the Collateral granted hereunder securing the Secured Obligations; and (xxii) "UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of California; provided, that if by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of the Security Interest is governed by the Uniform Commercial Code as in effect in a jurisdiction other than California, "UCC" means the Uniform Commercial Code as in effect is such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection; any term used in the UCC and not defined in this Agreement has the meaning given to the term in the UCC.

**2. LOAN; EFFECTIVE DATE; TERM.** Holder agrees to make a term loan of the Principal Amount set forth in the heading of this Agreement (the "Loan") to Company subject to the terms and conditions and based upon the representations and warranties contained in this Agreement. The term of this Agreement (the "Term") shall commence on the date that Holder accepts this Agreement as conclusively evidenced by the date of Holder's signature below. The foregoing notwithstanding, Holder may postpone, without penalty, the disbursement of any or all of the Principal Amount to the Company until all Security Interests have been perfected, it has received all required personal guarantees and any other documentation required by Holder, and all conditions precedent to the disbursement of Principal Amount have been satisfied as determined by Holder in its sole discretion.

**3. OBLIGATION TO REPAY LOAN.**

(a) On each Payment Date Company shall pay to Holder via ACH debit to the Business Account initiated by Holder, the Payment until the entire Repayment Amount has been paid. All amounts due under this Agreement and not previously paid shall be payable on the Maturity Date. In the event of a shortfall in any such payment, Company shall make payment in good funds at the office of Holder.

(b) Upon the occurrence, and during the continuation, of an Event of Default, the interest rate on the Loan shall be increased by five (5) percentage points and the Payment shall be increased to assure timely payment of any increased interest and/or fees, as determined by Holder in its sole discretion. Holder shall provide Company of notice of such determination and the revised Payment Amounts, but Holder's failure to provide such notice shall not reduce Company's liability therefor or excuse non-payment thereof. By way of example, and not by way of limitation, if the interest rate on the Loan is nineteen percent (19%) per annum, then the annualized interest rate on the Loan shall instead be twenty-four percent (24%) per annum upon the occurrence of and during the continuation of an Event of Default.

**4. OBLIGATION TO PAY TRANSACTION AND PROCESSING FEES.** In addition to any other fees described in the Agreement, Company agrees to pay the following fees:

(i) Origination Fee: A one-time non-refundable Origination Fee in the amount set forth in the heading of this Agreement, which fee shall be immediately deducted from the proceeds of the Principal Amount and retained by Holder;

(ii) Returned Payment Fee: A Returned Payment Fee in the amount of the lesser of fifteen Dollars ($15.00) or the maximum amount permitted by law if any of Company's payments, including ACH debits initiated by Holder, is returned unpaid or dishonored for any reason; and

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 29 of 59 NYSCEF: 08/15/2019
INDEX NO. EF002854-2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
DocuSign Envelope ID: 410750B9-A61E-4B81-8679-836E0800AA6
NYSCEF DOC. NO. 3
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

(iii) Late Fee: A Late Fee in the amount of four percent (4%) of any Payment Amount not received by Holder on the scheduled due date thereof as provided in this Agreement.

## 5. PAYMENTS

(a) The obligations created under this Agreement shall be repaid by the Company in U.S. Dollars and shall be paid free and clear of, and without reduction by reason of, any deduction, setoff, or counterclaim. Payment shall be made either as specified in Section 3(a) or by wire transfer, cash, ACH payment or debit, cashier's check or money order to the address designated by Holder.

(b) Company shall not make any partial payment marked, whether on the instrument itself or by a separate, accompanying or attached writing, with restrictive language such as "payment in full", "without recourse" or similar language which purports to limit Company's obligation to Holder. If Company makes such a payment, the payment shall be deemed a partial payment or a "payment on account," and the purported limitation shall be deemed not to have been accepted by Holder and null and void for all purposes as if never included.

(c) Holder reserves tha right to apply all payments made by the Company to Company's outstanding Secured Obligations in any order and in any manner, in Holder's sole discretion.

(d) Company may prepay the Repayment Amount in full before the Maturity Date, but any prepayment will not reduce the total Repayment Amount owed.

## 6. REPRESENTATIONS & WARRANTIES OF THE COMPANY. The Company represents and warrants to the Holder that:

(a) (i) If Company is a Corporation, limited liability company, limited partnership or general partnership, then it is validly existing and in good standing under the laws of its state of organization; it has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; it has all requisite power and authority to execute and deliver this Agreement and to perform all of its obligations and undertakings, and to carry out the transactions contemplated, under this Agreement; and the execution and delivery of, and the performance of all obligations of Company under this Agreement have been duly and validly authorized by all necessary action; (ii) If Company is a Sole Proprietorship, then the natural person who is the sole proprietor has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; and has the full and unrestricted legal capacity to execute and deliver this Agreement and to perform all of his or her obligations and undertakings, and to carry out the transactions contemplated, under this Agreement.

(b) Company's principal place of business, and the place where it keeps its records concerning its accounts, contract rights and other properties, is the Principal Place of Business as set forth in the heading of this Agreement;

(c) The exact legal name of Company is as set forth in the heading of this Agreement;

(d) The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder, and compliance with the provisions of this Agreement, do not and will not (A) violate the certificate of incorporation, limited liability company certificate, limited liability company agreement, partnership agreement, bylaws or other organizational document of Company; (B) conflict with, or result in any violation, of any applicable law, rule, regulation, judgment, injunction, order or decree; or (C) conflict with, constitute a default, or entitle any Person or entity to receipt of notice or to a right of consent, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit, or to any increased, additional, accelerated or guaranteed rights or entitlement of any Person or entity, or result in the creation of any claim on the properties or assets of Company, under any provision of any agreement or other instrument binding upon Company;

(e) Company is solvent, is generally able to pay its debts as they come due, and has not incurred debts beyond its ability to pay those debts;

(f) There is no action, suit, claim, investigation or legal or administrative or arbitration proceeding pending or currently threatened whether at law or in equity or before any federal, state, local, foreign or other court, governmental department, commission,

board, bureau, agency or instrumentality (collectively, "Governmental Authorities") against Company;

(g) All organization papers and all amendments thereto of Company have been duly filed and are in proper order and any capital stock, membership interests, or partnership interests issued by Company and outstanding were and are properly issued and all books and records of Company are accurate and up to date and will be so maintained;

(h) Company (A) is subject to no pending or threatened litigation, claim, judgment, award, decreed, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on its financial condition, business or prospects; and (B) is in compliance with its organization documents and by-laws, all contractual requirements by which it may be bound and all applicable laws, rules and regulations other than laws, rules or regulations the validity or applicability of which it is contesting in good faith or provisions of any of the foregoing the failure to comply with which cannot reasonably be expected to materially adversely affect its financial condition, business or prospects or the value of the Collateral;

(i) Company is in compliance with all statutes, rules, regulations, orders or restrictions of all applicable Governmental Authorities; all federal, state, local and foreign tax returns and tax reports, end all taxes due and payable arising there from required to be filed by Company have been or will be filed and paid, on a timely basis (including any extensions); all such returns and reports are and will be true, correct end complete; Company has disclosed to Holder in writing all of its material liabilities and, to the best of its knowledge, knows of no material contingent liabilities, except current liabilities incurred in the ordinary course of business consistent with past practice; Company's accounts receivable are generated in the ordinary course of the conduct of commerce or business;

(j) No Person other than Company has any interest in or claim against the Collateral;

(k) Company is not the owner of any commercial tort claims as of the date of execution of this Agreement, and to the extent it becomes owner of any commercial tort claims subsequent to the date of this Agreement, it will assign same to Holder as Collateral and cooperate with Holder and take such actions and execute and deliver such documents as Holder shall reasonably request, in perfecting such Security Interest; and

(l) it is not engaged in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Products or Marijuana Accessories, nor is any property owned by Company (whether or not securing the loan made hereunder) being utilized by Company, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing.

.

## 7. COVENANTS OF THE COMPANY.

(a) Insurance. Company shall maintain adequate insurance providing coverage consistent with that ordinarily maintained by similarly situated businesses and provide evidence of such insurance to Holder upon reasonable request and shall maintain such insurance as Holder may require with respect to the Collateral, in form, amount and coverage acceptable to Holder, naming Holder as loss payee.

(b) Use of Proceeds. The Loan contemplated by this Agreement is being made for business purposes only. As material inducement to Holder to make the Loan, Company covenants and agrees that neither the Principal Amount nor any portion thereof will be used for consumer, personal, family or household purposes. Company agrees that it has requested the Loan for business purposes only, and not for consumer, personal, family or household purposes. Company's representation and commitment that it is not using the Principal Amount for consumer, personal, family or household purposes means that neither it nor its principals will be entitled to the benefits of certain important duties imposed upon entities making loans for consumer, family, household or personal purposes, and/or to the benefits of certain important rights conferred upon consumers, pursuant to federal or state law. Company agrees that a breach by Company of the provisions of this section will not affect Holder's right to (i) enforce Company's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) use any remedy legally available to tender, even if that remedy would not have been available had the Loan been made for consumer purposes. The Principal Amount shall be used solely for one or more of the following business purposes: (i) to buy merchandise, inventory or related goods that Company will rent

**FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM** INDEX NO. EF002854-2019

NYSCEF DOC. NO. 15 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 30 of 59 RECEIVED NYSCEF: 08/15/2019

INDEX NO. EF002854-2019

**FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM**

DocuSign Envelope ID: 4107BD8E-A01E-4B61-8670-B38E09805FAB

NYSCEF DOC. NO. 3 RECEIVED NYSCEF: 04/11/2019

or sell its customers; (ii) to buy equipment, inventory or other goods for use in Company's business; (iii) for training or other services needed in Company's business; or (iv) to make improvements to the Company's place of business. Company may not use any part of the Principal to make any distribution to or to pay any dividend to any shareholder, member, partner or owner of the Company. Holder shall be under no obligation to verify the proper application or use of the proceeds of the Loan.

(c) Preservation of Collateral. All Collateral (or records of Collateral that is composed of accounts, chattel paper or general intangibles) shall be located at Company's Principal Place of Business. Company shall not sell, offer to sell, transfer or otherwise dispose of any Collateral, except for inventory sold and accounts collected in the ordinary course of Company's business. Company shall not sell, offer to sell, transfer or otherwise dispose of any Collateral for less than the fair market value of such Collateral. Company shall keep and maintain the Collateral in good order, repair and condition. Company shall immediately notify Holder in the event that any Collateral is lost, stolen or damaged.

(d) Change in Organization and Operation. The Company shall not, without the prior written consent of Holder: (i) incur any indebtedness (other than trade payables incurred in the ordinary course of business), (ii) incur any obligation or liability (contingent or otherwise) in an amount, in the aggregate, in excess of twenty-five thousand Dollars ($25,000.00), (iii) grant, or permit to be created any Lien other than the Security Interest, (iv) merge or consolidate with another entity, which merger or consolidation results in less than fifty percent (50%) of the outstanding voting securities of the resulting entity being owned by the then existing holders of securities of the Company, (v) transfer, assign, license, sell, lease or otherwise dispose of all or substantially all of its assets to a Person that is not a wholly-owned subsidiary of the Company; provided, that the Company shall cause any such subsidiary to comply with the provisions of this Section 7(d), (vi) close the Business Account (the Company shall promptly deposit all revenues received in the ordinary course of business in the Business Account) or (vii) open or maintain any checking account other than the Business Account.

(e) Taxes, Levies and Assessments. Company shall file all federal, state and local tax returns when due, shall pay all taxes, levies and assessments when due, and shall provide Holder with evidence of such filing and payment upon Holder's request.

(f) Further Liens Prohibited. Company shall not permit any Liens to be imposed upon the Collateral. Company shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any Lien, Security Interest, encumbrance or charge, other than the Security Interest. If a non-permitted Lien is imposed upon any Collateral without Company's consent, then Company shall discharge such Lien within five (5) Business Days of its imposition.

(g) Holder's Right of Inspection. Company shall permit Holder and Holder's designated representatives to examine and photograph the Collateral and the interior and exterior of Company's place of business, during normal business hours.

(h) Company to Hold Holder Harmless. Company shall indemnify and hold Holder harmless from all damages, liabilities, losses, costs and expenses (including attorney's fees) that Holder suffers as a result of Company's breach of any obligation in this Agreement, or of the failure of any representation or warranty to be true when made or to continue to be true.

(i) Prohibited Substances: Company shall not engage in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Products or Marijuana Accessories, nor shall any property owned by Company (whether or not securing the loan made hereunder) be utilized by Company, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing.

## 8. EVENTS OF DEFAULT. Each of the following events ("Events of Default") shall constitute a default under this Agreement:

(i) the Company fails to pay the Payment Amount when due, or any fees or any other amount payable hereunder when due, or the Holder is unable to collect any payment or debt of Company when due;

(ii) the Company fails to observe or perform any covenant or agreement made in this Agreement, or any representation, warranty, certification or statement made by the Company in, or delivered pursuant to, this Agreement shall prove to have been incorrect in any material respect when made (or when deemed made);

(iii) the Company defaults under any agreement with any third party that, in Holder's sole discretion, is material to its business or that constitutes a lease of real or personal property or that constitutes an agreement for the loan of money;

(iv) a judgment or order for the payment of money is rendered against the Company which continues unsatisfied and unstayed for a period of ten (10) calendar days;

(v) there is filed against Company either (A) a federal tax lien in favor of the United States of America or of any political subdivision of the United States of America, or (B) a state or local tax lien in favor of any state of the United States of America or any political subdivision of a state;

(vi) the Company undergoes a change of control, meaning a new Person or entity obtains a fifty percent (50%) or greater controlling or ownership interest;

(vii) the Company commences a voluntary case or other proceeding, or consent to itself or its debts under the Bankruptcy Code or under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property (collectively, "Bankruptcy Relief"), or makes a general assignment for the benefit of creditors, or fails generally to pay its debts as they become due, or legally dissolves, or ceases doing business as a going concern, or takes any corporate, partnership or limited liability company action to authorize any of the foregoing, or fails to take any action necessary to continue in good standing under the laws of the state of its organization;

(viii) an involuntary case or other proceeding seeking Bankruptcy Relief shall be commenced against the Company and shall remain undismissed for a period of sixty (60) calendar days, or an order for relief shall be entered against the Company under any bankruptcy laws as now or hereafter in effect; or Company shall dissolve or liquidate, or be dissolved or liquidated, or cease to legally exist; or Company (if a natural person) shall die;

(ix) the Security Interest shall, for any reason (other than Holder's failure to renew the UCC financing statement), cease to be a first priority, perfected security interest in and to any Collateral;

(x) the Company shall default under any of the Secured Obligations;

(xi) any creditor of the Company takes any action to reclaim or repossess any portion of Company's assets, or any creditor of the Company takes any action to levy upon, garnish, attach or execute upon any portion of Company's assets;

(xii) the person who executes this Agreement on behalf of Company dies or is legally declared to be incompetent; and

(xiii) any event occurs that would cause any lien creditor, as that term is defined in section 9-102 of the UCC, to take priority over the Security Interest created under the Agreement.

## 9. SECURITY INTEREST; RIGHTS AND REMEDIES OF THE HOLDER.

(a) The Company grants a Security Interest in the Collateral to the Holder to secure the payment or performance of the Secured Obligations.

(b) (i) The Company hereby represents and warrants that (A) the Security Interest constitutes a valid security interest under the UCC securing the Secured Obligations; and (B) when UCC financing statements shall have been filed in the appropriate filing office, the Security Interest shall constitute a perfected security interest in the Collateral, prior to all other Liens and rights of others therein and (C) the Company has rights in, and marketable title to, the Collateral; (ii) The Company covenants that it shall not (A) change its name, identity or corporate structure, or (B) its jurisdiction of organization, unless it shall have given Holder prior written notice and delivered an opinion of counsel with respect to the continued perfected Security Interest. The Company shall not in any event change the jurisdiction of incorporation or transfer any assets (to a subsidiary or otherwise) if such change would cause the Security Interest in such Collateral to lapse or cease to be perfected; and (iii) The Company covenants that it shall, from time to time, at its expense, take such action that may be necessary or desirable, or that Holder may reasonably request, in order to create, preserve, perfect, confirm or validate the Security Interest, or to enable Holder to exercise or enforce any of its rights, powers and remedies hereunder with respect to any of the Collateral.

**FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM**
INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 31 of 59 YSCEF: 08/15/2019

**FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM**
INDEX NO. EF002854-2019
DocuSign Envelope ID: 44978D65-A915-4B61-8670-638EE0606FAB
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 04/11/2019

(c) The Company agrees that Holder may file any financing statement, Lien entry form or other document that Holder requires in order to perfect, amend or continue Holder's Security Interest in the Collateral.

(d) If an Event of Default occurs, then at any time thereafter, Holder may exercise all rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised). Holder may be the purchaser of any or all of the Collateral sold at any public sale. The Company will perform all actions as Holder in its sole discretion deems necessary or advisable in order that any such sale may be made in compliance with law. Upon any such sale, the Collateral shall be delivered, assigned and transferred to Holder. At any such sale, Holder shall hold the Collateral free from any claim or right, and the Company, to the extent permitted by law, hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter adopted. By way of example, and not by way of limitation, Holder may exercise any one or more of the following rights and remedies, immediately and without prior notice: (I) Holder may declare the entire outstanding Repayment Amount immediately due and payable; (II) Holder may set off and charge against any deposit accounts of Company or Guarantor (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of Company or Guarantor) which at any time shall come into the possession or custody or under the control of Holder (including, without limitation the Business Account) or any of its agents, Affiliates or correspondents, any and all obligations due hereunder; (III) Holder may debit, via ACH, from the Business Account any amounts due or accelerated; (IV) Holder may require the Company to deliver to Holder all or any portion of the Collateral and certificates of title or documents relating to the Collateral; (V) Holder may require the Company to assemble all or any portion of the Collateral and certificates of title or documents relating to the Collateral and make it available to Holder at a time and place designated by Holder; (VI) Holder may enter the Company's property to take possession of and remove all or any portion of the Collateral and certificates of title or documents relating to the Collateral (including other goods not covered by this Agreement), provided that such entry can be accomplished without a breach of the peace and provided further that Holder makes reasonable efforts to return goods not covered by this Agreement to the Company after repossession; (VII) Holder may sell, lease, transfer, or otherwise deal with the Collateral or Proceeds hereof in Holder's own name or that of Company. Holder may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Holder will give Company, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any Person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that Person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least 10 calendar days before the time of the sale or disposition; (VIII) Holder may have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the Proceeds, over and above the cost of the receivership, against the Secured Obligations. The receiver may serve without bond if permitted by law. Holder's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Secured Obligations by a substantial amount. Employment by Holder shall not disqualify a Person from serving as a receiver; (IX) Holder may collect the payments, rents, income, and revenues from the Collateral. Holder may at any time in Holder's discretion transfer any Collateral into Holder's own name or that of Holder's nominee and receive the payments; rents, income and revenues therefrom and hold the same as security for the Obligations or apply it to payment of the Obligations in such order of preference as Holder may determine, insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Holder may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize on the Collateral as Holder may determine, whether or not any amount included within the Obligations

is then due. For these purposes, Holder may, on behalf of and in the name of Company, receive, open and dispose of mail addressed to Company, change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment or storage of any Collateral. To facilitate collections, Holder may notify account debtors and Obligors on any Collateral to make payments directly to Holder; (x) If Holder chooses to sell any or all of the Collateral, Holder may obtain a judgment against Company for any deficiency remaining on the Secured Obligations due to Holder after application of all amounts received from the exercise of the rights provided in this Agreement. Company shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper; (xi) Holder shall have all the rights and remedies of a secured creditor under the provisions of the UCC, as amended from time to time. Holder shall have and may exercise any and all other rights and remedies it may have available at law, in equity or otherwise; (xii) If Company fails to obtain or maintain any required insurance, then in addition to such failure being an Event of Default, Holder may obtain such insurance at Company's expense; (xiii) If any action or proceeding is commenced that would materially affect Holder's interest in the Collateral or if Company fails to comply with any provision of this Agreement including but not limited to Company's failure to discharge or pay when due any amounts Company is required to discharge or pay under this Agreement, Holder on Company's behalf may (but shall not be obligated to) take any action that Holder deems appropriate, including but not limited to discharging or paying all taxes, Liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral; (xiv) In the event of any Event of Default and/or acceleration of this Agreement by the Holder pursuant to Section 9(d), the Company shall pay to Holder the outstanding balance of the Repayment Amount owing hereunder, provided, Holder may debit, via ACH, such amount from the Business Account, plus deduct an amount for reimbursement of Holder's expenses (including collection, court and attorney's fees) plus interest on such expenses at a rate of fifteen percent (15%) per annum, or the highest rate permitted by applicable law, whichever shall be less. In addition, the Holder shall have all remedies permitted at law, equity, or by statute for such breach, in addition to all the remedies outlined herein being cumulative and not exclusive; (xv) The Company hereby irrevocably appoints Holder its true and lawful attorney, said appointment being coupled with an interest, with full power of substitution, in the name of the Company for the sole use and benefit of Holder, but at the Company's expense, to the extent permitted by law, to exercise, at any time and from time to time while an Event of Default has occurred and is continuing, all of the following powers with respect to all or any of the Collateral: (A) to demand, sue for, collect, receive and give acquittance for any and all monies due or to become due thereon or by virtue thereof; (B) to settle, compromise, compound, prosecute or defend any action or proceeding with respect thereto; (C) to sell, transfer, assign or otherwise deal in or with the same or the Proceeds thereof, as if Holder were the absolute owner thereof; and (D) to extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto; provided that Holder shall give the Company not less than ten (10) calendar days' prior written notice of the time and place of any sale or other disposition of any of the Collateral, except any Collateral which is perishable, threatens to decline speedily in value or is customarily sold on a recognized market. The Company agrees that such notice constitutes "reasonable notification" within the meaning of Section 9-610(b) of the UCC.

(e) All expenses of Holder taken in exercising its rights and remedies under this Section 9 shall be deemed Additional Expenses. Additional Expenses will be added to the Company's obligations under this Agreement and, at Holder's option, will: (i) be payable on demand; (ii) be added to the balance of the Secured Obligations and be apportioned among and be payable with any installment payments to become due during the remaining term of the Secured Obligations; or (iii) be treated as a balloon payment that will be due and payable on the Maturity Date.

(f) If Company fails to preserve the Collateral, or sell, offer to sell, transfer or otherwise dispose of any or all of the Collateral without Holder's prior written authorization, Holder at its sole discretion, may declare the entire outstanding

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 32 of 59 08/15/2019
INDEX NO. EF002854-2019
FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
DocuSign Envelope ID: 5F04586-A041-48D1-9070-B48EC0888F78
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 04/11/2019

Repayment Amount immediately due and payable and, in addition to any other rights and remedies available to Holder at law, in equity or otherwise, impose a default fee in the amount of five thousand Dollars ($5,000) to Company, payable immediately, upon demand.

**(g)** Except as may be prohibited by applicable law, all of Holder's rights and remedies, whether evidenced by this Agreement, any related documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Holder to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Company under the Agreement, after Company's failure to perform, shall not affect Holder's right to declare a default or to exercise its remedies.

**10. REPLACEMENT OF NOTE.** Upon receipt by the Company of notice from Holder of the loss, theft, destruction or mutilation of this Agreement, and (in case of loss, theft or destruction) of indemnity reasonably satisfactory to it, and upon reimbursement of all reasonable expenses incidental thereto, and (if mutilated) upon surrender and cancellation of this Agreement, the Company shall within three (3) Business Days after receipt of such notice, make and deliver to Holder a replacement note of upon identical terms and conditions, and dated as of the date, hereof.

**11. FURTHER ASSURANCES.** Company agrees to execute any further documents, and to take any further actions requested by Holder to evidence or perfect the Security Interest, to maintain the first priority of the Security Interest, or to effectuate the rights granted to Holder herein or in any of the documents or agreements comprising the Secured Obligations. Company shall have possession of the Collateral except where otherwise provided in this Agreement or where Holder chooses to perfect its Security Interest by possession or control.

**12. FINANCIAL INFORMATION.** Company and Guarantor(s) hereby represent and warrant that all information provided by or on their or any signing principal's behalf to Holder in connection with or pursuant to this Agreement is true, complete and accurate. Company and Guarantor(s) shall furnish Holder, such information, from time to time, as may be requested for the purpose of deciding whether to approve or for any update or renewal, extension of credit or other lawful purpose. Company also agrees that Holder may release information to comply with governmental reporting or legal process that Holder believes may be required, whether or not such is in fact required, or when necessary completing a transaction, or when investigating a loss or potential loss.

**13. NOTICES.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery, (b) the fifth (5th) Business Day after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (c) one (1) calendar day after deposit with a nationally recognized overnight courier, specifying next calendar day delivery, with written verification of receipt. All communications shall be sent to such address or facsimile number as the party to whom notice is to be given may have furnished to the other party in writing in accordance herewith.

**14. SURVIVAL.** All covenants, agreements, representations and warranties made herein shall survive the execution hereof, and shall remain in effect until full repayment and performance by Company of all the Secured Obligations.

**15. NON-EXCLUSIVITY AND WAIVER OF RIGHTS.** No failure to exercise and no delay in exercising on the part of any party, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any other rights or remedies provided by law.

**16. ASSIGNMENT.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; provided, however,

that Company may not assign this Agreement or any rights or duties hereunder and any prohibited assignment shall be absolutely void. No consent to an assignment by Holder shall release Company from its obligations. Holder may assign this Agreement and its rights and duties hereunder and no consent or approval by Company is required in connection with any such assignment. Holder reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in Holder's rights and benefits hereunder. In connection with any assignment or participation, Holder may disclose all documents and information that Holder now or hereafter may have relating to Company or Company's business. To the extent that Holder assigns its rights and obligations hereunder to another party, Holder thereafter shall be released from such assigned obligations to Company and such assignment shall affect a novation between Company and such other party.

**17. ASSIGNEES TO BE BOUND.** This Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of Holder and shall bind all persons who become bound as a debtor to this Agreement.

**18. WAIVERS, CONSENTS AND COVENANTS.** Company, any endorser or guarantor hereof (individually an "Obligor" and collectively "Obligors" for purposes of this paragraph) and each of them jointly and severally: (a) waive presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligor in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, any endorsement or guaranty of this Agreement, or any other documents executed in connection with this Agreement or any other Agreement or other loan documents now or hereafter executed in connection with any obligation of Company to Holder (the "Loan Documents" for purposes of this paragraph); (b) consent to all delays, extensions, renewals or other modifications of this Agreement or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Holder of any of Obligors, or release, substitution or exchange of any security for the payment hereof, or the failure to act on the part of Holder, or any indulgence shown by Holder (without notice to or further assent from any of Obligors), and agree that no such action, failure to act or failure to exercise any right or remedy by Holder shall in any way affect or impair the obligations of any Obligors or be construed as a waiver by Holder of, or otherwise affect, any of Holder's rights under this Agreement, under any indorsement or guaranty of this Agreement or under any of the Loan Documents; and (c) agree to pay, on demand, all costs and expenses of collection or defense of this Agreement or of any indorsement or guaranty hereof and/or the enforcement or defense of Holder's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

**19. GUARANTY.** Guarantor hereby unconditionally guarantees the full and punctual payment of the Repayment Amount, and the full and punctual payment of all other amounts payable by the Company under this Agreement. Upon failure by the Company to pay punctually any such amount, Guarantor shall forthwith on demand pay the amount not so paid at the place and in the manner specified in this Agreement. The obligations of Guarantor hereunder shall be unconditional and absolute and shall not be released or discharged until the Repayment Amount or any other amount payable by the Company under this Agreement shall have been paid in full. Guarantor irrevocably waives acceptance hereof, presentment, demand, protest and any notice not provided for herein, as well as any requirement that at any time any action be taken by any Person against the Company or any other Person. Guarantor waives notice of acceptance of the guaranty and notice of defaults by the Company, and consents to any extension or extensions of the time or times of the payment of the Obligations, or any portion thereof, and to any change in form, or renewal of any time, of such Obligations, or any part thereof, or to any evidence thereof taken at any time by Holder. If acceleration of the time for payment

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1 Case 7:19-cv-08149-CS Document 1-5 Filed 08/30/19 Page 33 of 59
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
DocuSign Envelope ID: 4107ED6C-A015-4B61-8670-638EC9805FAB
NYSCEF DOC. NO. 3
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019

of any amount payable under this Agreement is stayed upon the insolvency, bankruptcy or reorganization of the Company, such amount shall nonetheless be payable by Guarantor hereunder forthwith on demand by Holder.

**20. WAIVERS BY GUARANTOR.**

(a) Guarantor waives notice of acceptance of this Guaranty, notice of any liabilities or obligations including, without limitation, the Secured Obligations, to which it may apply, presentment, demand for payment, protest, notice of dishonor or nonpayment of any liabilities, notice of intent to accelerate, notice of acceleration, and notice of any suit or the taking of other action by Holder against Company, Guarantor or any other Person, any applicable statute of limitations and any other notice to any party liable on any loan document evidencing the Secured Obligations and this Agreement (including Guarantor).

(b) Each Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Company that arises hereunder and/or from the performance by any other Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Holder against Company or against any security which Holder now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

(c) Guarantor also waives the benefits of any provision of law requiring that Holder exhaust any right or remedy, or take any action, against Company, any Guarantor, any other Person and/or property including but not limited to the provisions of the California Civil Code Sections 2845, 2849 and 2850, inclusive, as amended, or otherwise. This is a guaranty of payment and not of collection.

(d) Holder may at any time and from time to time without notice to Guarantor (except as required by law), without incurring responsibility to Guarantor, without impairing, releasing or otherwise affecting the obligations of Guarantor, in whole or in part, and without the indorsement or execution by Guarantor of any additional consent, waiver or guaranty: (i) change the manner, place or terms of payment, or change or extend the time of or renew, or change any interest rate or alter any liability or obligation or installment thereof, or any security therefor; (ii) loan additional monies or extend additional credit to Company, with or without security, thereby creating new liabilities or obligations the payment or performance of which shall be guaranteed hereunder, and the Guaranty herein made shall apply to the liabilities and obligations as so changed, extended, surrendered, realized upon or otherwise altered; (iii) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property at any time pledged or mortgaged to secure the liabilities or obligations and any offset there against; (iv) exercise or refrain from exercising any rights against Company or others (including Guarantor) or act or refrain from acting in any other manner; (v) settle or compromise any liability or obligation or any security therefor and subordinate the payment of all or any part thereof to the payment of any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; (vi) release or compromise any liability of Guarantor hereunder or any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; or (vii) apply any sums from any sources to any liability without regard to any liabilities remaining unpaid. The phrases "liabilities" and "obligations" as used herein shall include, without limitation, the Secured Obligations and this Agreement.

**21. ARBITRATION PROVISION.** (a) READ THIS PROVISION CAREFULLY. IT AFFECTS YOUR RIGHT TO A JURY TRIAL, YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION AND OTHER RIGHTS. Any and all disputes, claims or controversies by any party hereto (including any Guarantor), arising out of or in connection with this Agreement or the interactions of the parties with each other, no matter how described, pleaded or styled, including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration. However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole).

(b) THERE SHALL BE NO RIGHT TO A JURY TRIAL. Any necessary arbitration hearing shall be conducted at a location reasonably convenient to Company. The arbitration shall be conducted (i) before the American Arbitration Association (the "AAA"), pursuant to the AAA Commercial Arbitration Rules, (ii) before JAMS under its Streamlined Arbitration Rules & Procedures or its Comprehensive Arbitration Rules & Procedures, as applicable or, (iii) if both AAA and JAMS are not able or willing to handle the arbitration, by an arbitrator selected by the parties jointly or by a court. The AAA Commercial Arbitration Rules are available online at www.adr.org and can be also be obtained by phone at 1-800-778-7879, by mail at 1633 Broadway, 10th Floor, New York, New York 10019 or upon written request sent to Holder. JAMS rules are available online at www.jamsadr.com and can also be obtained by phone at 1-800-352-5267, by mail at 620 Eighth Avenue, 34th Floor, New York, NY 10018 or upon written request sent to Holder. Notwithstanding the foregoing, in the event of any conflict between this Arbitration Provision and the arbitration rules that would otherwise apply, this Arbitration Provision will govern.

(c) The arbitration shall be conducted by one neutral arbitrator appointed by the arbitration company or as otherwise provided in Section 21(b). The arbitrator shall have actual experience in and knowledge of Company financing transactions to the greatest extent practicable, unless the parties agree otherwise. The arbitrator shall have the authority to award any monetary and nonmonetary relief otherwise available to either party in an action otherwise prosecuted in court, including injunctive and other provisional relief, provided that the arbitrator shall have no authority to award relief for any Person that is not a party to this Agreement. Further, either party shall have the right to apply to any court of competent jurisdiction (subject to Paragraph 25 of this Agreement) for provisional relief of any kind, provided however that the final decision on any controversies or disputes between the parties shall be decided by the arbitrator. Judgment on the arbitration award may be entered by any court of competent jurisdiction, notwithstanding Paragraph 25 of this Agreement. The cost of initiating the arbitration and the arbitrator's compensation shall be paid by Holder. Each party shall bear its own attorneys' fees, except as otherwise provided by law.

(d) The parties hereto acknowledge and agree that, notwithstanding any language herein to the contrary: (1) the arbitration shall be solely between the parties to this Agreement; and (2) no class arbitration or other representative action may be undertaken by the arbitrator.

If any portion of this Arbitration Provision cannot be enforced, the rest of this Arbitration Provision will continue to apply, except that: (1) if a court rules that the arbitrator can decide a claim on a class or other representative basis and the court's ruling is not reversed on appeal, only this sentence will apply and the remainder of this Arbitration Provision will be void; and (2) if a claim is brought seeking public injunctive relief and a court determines that the restrictions in this Arbitration Provision prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such claim (and that determination becomes final after all appeals have been exhausted), the claim for public injunctive relief will be determined in court and any individual claims seeking monetary relief will be arbitrated. In such a case the parties will request that the court stay the claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court.

(e) The Federal Arbitration Act shall govern the interpretation, implementation and enforcement of this Arbitration Provision to the fullest extent possible, to the

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM  INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1  Case 7:19-cv-08149-CS  Document 1-5  Filed 08/30/19  Page 34 of 59  NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM  INDEX NO. EF002854-2019
DocuSign Envelope ID: 41076DB6-A016-4B61-8676-633EC9805FAB
NYSCEF DOC. NO. 3  RECEIVED NYSCEF: 04/11/2019

exclusion of all otherwise potentially applicable state law, regardless of the location of the arbitration proceedings or the nature of the disputes or controversies between the parties to this Agreement. Company may elect to opt out of this Arbitration Provision by sending written notice to Holder. Such written notice must be received by Holder before 5:00 p.m. Eastern Time on the tenth (10th) calendar day after this Agreement is executed, or such notice shall be of no force and effect. The foregoing time limit shall be strictly construed. Opting out of this Arbitration Provision shall not terminate the Agreement or otherwise affect in any way any of the other rights and obligations of the parties hereto under the terms of the Agreement.

Company's Initials:

**22 PARTIAL INVALIDITY.** Any term or provision of this Agreement shall be ineffective to the extent it is declared invalid or unenforceable, without rendering invalid or enforceable the remaining terms and provisions of this Agreement. The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Agreement or any agreement incorporated herein by reference or referenced herein to any Person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other Persons or circumstances.

**23. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent not prohibited by applicable law, Company shall pay to Holder on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses which may be expended by Holder to obtain or enforce payment of Obligations either as against Company or any Guarantor or surety of Company or in the prosecution or defense of any action or concerning any matter growing out of or connected with this Agreement, the Collateral, or any of Holder's rights therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Holder in connection with the administration, supervision, protection or realization on any security held by Holder for the debt secured hereby, whether such security was granted by Company or by any other Person primarily or secondarily liable (with or without recourse) with respect to such debt; and all costs and expenses incurred by Holder in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Holder in connection therewith, which amounts shall be considered advances to protect Holder's security, and shall be secured hereby. All such costs and expenses shall be deemed Additional Expenses.

**24. EXECUTION IN COUNTERPARTS AND BY FACSIMILE.** This Agreement may be executed in two or more counterparts, each of which counterparts be original or facsimile signature, shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument.

**25. APPLICABLE LAW, VENUE AND JURISDICTION.** This Agreement and the rights and obligations of Company and Holder shall be governed by and interpreted in accordance with the law of the State of California. In any litigation in connection with or to enforce this Agreement or any indorsement or guaranty of this Agreement or any Loan Documents, Obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of California or the United States located within the State of California and expressly waive any objections as to venue in any such courts. Nothing contained herein shall, however, prevent Holder from complying with applicable law (including any and all rules, regulations, interpretations, and determinations of any applicable state or federal regulatory

agency), bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law. Company waives any requirement of personal service of process. Any summons and complaint shall be deemed properly served and shall confer personal jurisdiction over Company if served by registered mail or by certified mail.

**26. INTERPRETATION.** Paragraph and section headings used in this Agreement are for convenience only, and shall not affect the construction of this Agreement. Neither this Agreement or any uncertainty or ambiguity herein shall be construed or resolved against Holder or Company, whether under any rule of construction or otherwise. On the contrary, this Agreement has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto.

**27. JURY TRIAL WAIVER.** To the extent that the provisions of Section 21 are not enforced for any reason, Company and Holder waive their right to a trial by jury of any claim or cause of action based upon, arising out of or related to the Agreement and all other documentation evidencing the Obligations, in any legal action or proceeding.

**28. USURY SAVINGS CLAUSE.** The Company and the Holder intend to comply with applicable usury laws and therefore, under no circumstances shall Holder be entitled to collect, receive or apply as interest any interest, fees, charges or other payments equivalent to interest in excess of the maximum amount of interest which may be charged under applicable law (the "Maximum Rate"). It is the parties' belief, understanding and intention that the applicable law is federal law and, where federal law requires, the law of California. If Holder ever collects, receives or applies as interest any such amount, then the amount which would be excessive interest but for the application of this Section 28 shall first be applied to reduce the balance of the Principal Amount and then, if the balance of Principal is reduced to zero, then the remaining excess shall be returned to Company.

**29. CLASS ACTION WAIVER.** Holder and Company waive any right to assert any claim against one another by means of any class action or representative action, whether as a class representative or as a member of a class. If, notwithstanding the foregoing waiver, a court or law permits a party to this Agreement to participate in a class or representative action, then the parties hereto nevertheless agree that the prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action, and the party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured through the class or representative action.

**30. AMENDMENTS AND WAIVERS.** No modification, amendment or waiver of any provision of, or consent required by, this Agreement, nor any consent to any departure here from, shall be effective unless it is in writing and signed by Holder.

**31. ENTIRE AGREEMENT.** Any application Company signed or otherwise submitted in connection with the loan, secured promissory note, irrevocable ACH debit authorization and any other documents required by Holder now or in the future in connection with this agreement are hereby incorporated into and made part of this Agreement. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

**32. TIME OF THE ESSENCE.**
Time shall be of the essence of all of Company's obligations hereunder.

**The remaining space on this page is intentionally left blank**

Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 35 of 59

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
DocuSign Envelope ID: 4167BDBC-A01C-4B61-8670-638EC9808FAB
NYSCEF DOC. NO. 3

INDEX NO. EF002854-2019

RECEIVED NYSCEF: 04/11/2019

You consent that your electronic signature on agreements and documents has the same legal and **moral effect as if you signed such agreements** and documents in ink, and will be deemed valid, authentic, enforceable and binding.

In Witness Whereof, the undersigned have executed this Agreement under seal as of the date first below written.

**Company:** AF Trucking Inc. DBA AF Trucking

By: *Yida Falkovitz*
14D7F804867244C...

Name: Yida Falkovitz

Title: President

Date: 3/7/2019

**Guarantor**

*Yida Falkovitz*
14D7F804867244C...

**Name: Yida Falkovitz**

**Address: 3 Volova Road, Monroe, NY, 10950**

**Accepted:**

**Holder: AXOS Bank**

By: _____

**Name: Liz Nutting**

**Title: SVP, Strategic Partnerships and Network Relations**

**bfs capital**
champions of small business

Phone: (866) 914-3787
Fax: (888) 258-3698

## BUSINESS INFORMATION

| Legal Business Name: AF Trucking Inc. | DBA (if different): AF Trucking | |
|---|---|---|
| **Legal Entity:** ☑ Corp ☐ LLC ☐ Sole Prop ☐ LP ☐ Other S Corporation | **Date Business Established (MM/YYYY):** 11/2014 | **Date in Control (MM/YYYY):** 11/2014 |

| Business Classification: ☐ Retail ☐ Restaurant ☐ Services ☐ Manufacturer/Wholesaler ☐ Internet ☐ Mail Order/Telephone Order |
|---|

| Physical Address: 3 Volova Road Monroe NY 10950 |
|---|

| Mailing Address: |
|---|

| Business Phone: 910-359-2065 | Business Fax: | Mobile: 910-359-2065 |
|---|---|---|

| E-Mail: truckingneeds91@opt.net | Website: |
|---|---|

| Tax ID Number or Business Number: ▮▮▮▮▮ | Terminal/POS Make/Model: |
|---|---|

| Property Ownership: ☑ Lease ☐ Own | Years in Control: 4 | Months in Control: 5 | Products Sold: Transportation |
|---|---|---|---|

| Landlord / Mortgage Company Name: JNP Realty | Landlord Contact Name: |
|---|---|

| Landlord / Mortgage Company Phone: 555-555-5555 | Rent / Mortgage Payment: $ 0 |
|---|---|

| Has the business or any principal ever filed for Bankruptcy Protection? ☐ Yes ☐ No | Are there any pending, threatened, or recently filed claims, judgments or tax liens against the business or any principals? ☐ Yes ☐ No |
|---|---|

## COMPANY INFORMATION

| Average Monthly Card Sales: $ | Total Monthly Sales: $ | Annual Gross Sales: $2154719 |
|---|---|---|

| Desired Funding Amount: $ | Use of Funds: Cash Flow |
|---|---|

| Current Loan/Advance Balance? ☐ Yes: *Balance $_____ | Held With: _____ | ☐ No Current Loan/Advance |
|---|---|---|

## OWNER / PRINCIPAL INFORMATION

| Name: Yida Falkovitz | Title: President | % of Ownership: 100% |
|---|---|---|

| Home Address: 3 Volova Road Monroe NY 10950 |
|---|

| Home Phone: | Cell Phone: 910-359-2065 |
|---|---|

| E-Mail Address: yiddy@aftruckingusa.com |
|---|

| Date of Birth (MM/DD/YY): 09/26/1991 | Social Security or Social Insurance#: ▮▮▮▮▮ |
|---|---|

| Driver's License #: ▮▮▮▮▮ | Driver's License State or Province of Issuance: NY |
|---|---|

## OWNER / PRINCIPAL INFORMATION

| Name: | Title: | % of Ownership: |
|---|---|---|

| Home Address: |
|---|

| Home Phone: | Cell Phone: |
|---|---|

| E-Mail Address: |
|---|

| Date of Birth (MM/DD/YY): | Social Security or Social Insurance#: |
|---|---|

| Driver's License #: | Driver's License State or Province of Issuance: |
|---|---|

You consent that your electronic signature on agreements and documents has the same legal and moral effect as if you signed such agreements and documents in ink, and will be deemed valid, authentic, enforceable and binding. By signing below, the Merchant and its undersigned Owner(s) and Principal(s) certify that all information and documents submitted in connection with this application are true, correct and complete. Additionally the Merchant and each such Owner and Principal, individually, authorizes Business Financial Services, Inc., BFS West, Inc. and Small Business Term Loans, Inc., collectively BFS Capital, and AXOS Bank ("AXOS"), Member FDIC, or any of their respective agents, partners, and affiliates to: (1) obtain and use non-business consumer credit reports and any other information regarding such Merchant, Owner(s) and Principal(s) from third parties, (2) to verify any information provided on this application; and (3) to obtain the 12 most recent monthly reports detailing Merchant's payment card processing activity from its card processor or any agent or other third party utilized by that processor to authorize, clear and/or settle payment card payments. The products offered by BFS Capital can be either business loans or merchant cash advances. Business loans may be provided by either BFS Capital or AXOS. These products are not consumer loans or consumer advances. Products subject to lender or, in the case of merchant cash advances, funder, approval. Fees apply.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT – To help the government fight the funding of terrorism and money laundering activities, federal law requires financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

| Owner/Principal Signature: *Yida Falkovitz* | Owner/Principal Signature: _____ |
|---|---|
| Print Name: Yida Falkovitz | Print Name: _____ |

*Merchant Application Rev. 10/2018*

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1   Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 37 of 59   INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM   INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1   DocuSign Envelope ID: 4F67BD85-A945-45E1-8C7D-538E59808FA6   Rev. 10/2018
RECEIVED NYSCEF: 04/11/2019

| **FACTS** | **WHAT DOES AXOS BANK™ DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and account transactions<br>• Account balances and payment history<br>• Transaction history and checking account information |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Axos Bank™ chooses to share; and whether you can limit this sharing. |

| **Reasons we can share your personal information** | **Does Axos Bank share?** | **Can you limit this sharing?** |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| **To limit our sharing** | • Reply electronically by contacting us Privacy@bfscapital.com<br>• Call this toll-free number 855-479-7129<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br>However, you can contact us at anytime to limit our sharing. |
|---|---|
| **Questions?** | Call 855-479-7129 or email us at Privacy@bfscapital.com |

## Who we are

| **Who is providing this notice?** | Axos Bank, also known as UFB Direct. |
| --- | --- |

## What we do

| **How does Axos Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We restrict access to your personal information to our employees who need to know that information to provide your products and services. |
| --- | --- |
| **How does Axos Bank collect my personal information?** | We collect your personal information, for example, when you<br>• Open an account or deposit money<br>• Pay your bills or apply for a loan<br>• Use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes—information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with a common corporate identity or name.* |
| --- | --- |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates we share with can include tax preparation companies, insurance companies, direct marketing companies, nonprofit organizations, and other banks.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include finance companies, mortgage companies, insurance companies and investment companies.* |

## Other important information

You may have privacy rights under various state laws including Vermont, California and Nevada. Axos Bank will comply with these laws to the extent they apply. We may telephone existing customers with offers for additional financial products. You have the right to opt-out of this contact by calling (855) 479-7129 to add your name to our do-not-call/contact list. Nevada residents may also contact the Nevada Attorney General for opt out information by phone (775-684-1100); email (bcpinfo@ag.state.nv.us); or mail (100 N Carson St., Carson City, NV 89701). We may share your personal information with offshore service providers, for the limited purpose of providing a customer service call center for certain of the bank's products and services.

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1
Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 39 of 59
INDEX NO. EF002854-2019
NYSCEF: 08/15/2019

FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM
DocuSign Envelope ID: 4T678D86-A61E-4BE1-8670-838EC0608FA6
NYSCEF DOC. NO. 3
INDEX NO. EF002854-2019
RECEIVED NYSCEF: 04/11/2019



3301 North University Drive, Suite 300
Coral Springs, FL 33065

bfscapital.com

**CERTIFICATION OF BENEFICIAL OWNER(S)**

**INSTRUCTIONS**

**Step 1** Please enter the type of business entity (i.e. Corporation, Limited Liability Company or equivalent)

| | |
|---|---|
| Name and Title of Natural Person Applying on Behalf of Business: | John Doe, President |
| Name, Type, and Address of Legal Entity (Business) for Which Application is Being Made: | Doe Inc., Corporation, 123 Main Street, New York, NY 12345 |

**Step 2** Please list all of the owners of the business with 25% or more equity

| Name | Date of Birth | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For non-U.S. Persons: Social Security Number, Passport Number and Country of Issuance, or other similar identification number[1] | Percentage of Ownership |
|---|---|---|---|---|---|
| John Doe | 01/01/1953 | 456 Main Street, New York, NY 12345 | ▄▄▄▄ | Not Applicable | 30 |
| Jane Doe | 02/02/1950 | 456 Main Street, New York, NY 12345 | ▄▄▄▄ | Not Applicable | 30 |
| | | | | | |
| | | | | | |

(If no individual meets this definition, please write "Not Applicable.")

**Step 3** Please list one individual managing the business

(If appropriate, an individual listed above may also be listed in this section.)

| Name/Title | Date of Birth | Address (Residential or Business Street Address) | For U.S. Persons: Social Security Number | For non-U.S. Persons: Social Security Number, Passport Number and Country of Issuance, or other similar Identification number[1] | Percentage of Ownership |
|---|---|---|---|---|---|
| Jim Doe, CFO | 03/03/1988 | 789 Main Street, New York, NY 12345 | ▄▄▄▄ | Not Applicable | 0 |

**Step 4** Please list the name of the person applying on behalf of the business (This should match the name in Step 1)

I, _____John Doe_____ (*name of natural person applying on behalf of business*), hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

## bfs capital
champions of small business·

### CERTIFICATION OF BENEFICIAL OWNER(S)

| | |
|---|---|
| Name and Title of Natural Person Applying on Behalf of Business: | Yida Falkovitz, President |
| Name, Type, and Address of Legal Entity (Business) for Which Application is Being Made: | AF Trucking Inc., S Corporation 3 Volova Road , Monroe, NY, 10950 |

Provide the following information for <u>each</u> individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity (business) listed above:

| Name | Date of Birth | Address (Residential or Business Street Address) | *For U.S. Persons:* Social Security Number | *For non-U.S. Persons:* Social Security Number, Passport Number and Country of Issuance, or other similar identification number[1] | Percentage of Ownership |
|---|---|---|---|---|---|
| Yida Falkovitz | 09/26/1991 | 3 Volova Road Monroe NY 10950 | ███ █ ███ | | 100% |
| | | | | | |
| | | | | | |
| | | | | | |

(If no individual meets this definition, please write "Not Applicable.")

Provide the following information for <u>one</u> individual with significant responsibility for managing the legal entity (business) listed above, such as:

- An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
- Any other individual who regularly performs similar functions.

(If appropriate, an individual listed above may also be listed in this section.)

| Name/Title | Date of Birth | Address (Residential or Business Street Address) | *For U.S. Persons:* Social Security Number | *For non-U.S. Persons:* Social Security Number, Passport Number and Country of Issuance, or other similar identification number[1] | Percentage of Ownership |
|---|---|---|---|---|---|
| President | | | | | |
| Yida Falkovitz | 09/26/1991 | 3 Volova Road, Monroe NY 10950 | ██ █ ██ | | 100 |

[1] In lieu of a passport number, non-U.S. persons may also provide a Social Security Number, alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Initial here: _____





3301 North University Drive, Suite 300
Coral Springs, FL 33065

bfscapital.com

**YOU MUST PROVIDE A COPY OF GOVERNMENT-ISSUED PHOTO IDENTIFICATION FOR EACH INDIVIDUAL LISTED ON THIS CERTIFICATION.**

You consent that your electronic signature on agreements and documents has the same **legal and moral effect as if you signed such agreements and documents in ink, and will be deemed valid, authentic, enforceable and binding.**

I, Yida Falkovitz _____ *(name of natural person applying on behalf of business)*, **hereby certify, to the best** of my knowledge, that the information provided above is complete and correct.

Signature: *Yida Falkovitz* _____    Date: 3/7/2019 _____

Legal Entity Identifier (TIN): 47-2345538 _____ (optional)

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM    INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1    Case 7:19-cv-08149-CS    Document 1-5    Filed 08/30/19    Page 42 of 59    RECEIVED NYSCEF: 08/15/2019
FILED: ORANGE COUNTY CLERK 04/11/2019 12:52 PM    INDEX NO. EF002854-2019
NYSCEF DOC. NO. 1    DocuSign Envelope ID: 41076D85-A016-4B61-8670-538EC9805FAB    RECEIVED NYSCEF: 04/11/2019

# SECURED PROMISSORY NOTE
## AXOS Bank

| | |
|---|---|
| AF Trucking Inc. DBA AF Trucking | |
| **Company** | |
| 3 Volova Road , Monroe, NY, 10950 | NY |
| **Principal Place of Business** | **State of Organization** |
| Yida Falkovitz | |
| **Guarantor(s)** | |
| 09/26/1991 | |
| **Guarantor(s) Date of Birth** | |
| 3 Volova Road, Monroe, NY 10950 | |
| **Guarantor(s) Addresses** | |

| | | |
|---|---|---|
| TD Bank / | 4347104492 / | 026013673 / |
| **Bank Name** | **Bank Account Number** (the *"Business Account"*) | **Bank Routing Number** |
| $70,100.00 | $98,841.00 | $475.00 | $1,051.50 |
| **Principal Amount** | **Repayment Amount** | **Processing Fee** | **Origination Fee** |
| Daily ACH Fixed | $393.00 | 1.4100 | |
| **Payment Frequency:** | **Payment Amount** | **Factor Rate** | |
| Daily/Weekly | | | |

**Higher Cost Loan**

This loan is a higher cost loan than loans which may be available through other sources. Before signing you should fully consider all costs and fees associated with this loan.

**Please note:**

By signing this Promissory Note you will be accepting certain legal and financial obligations and waiving certain legal rights. You are, therefore, advised to consult with an attorney, and such other professional advisors as you deem appropriate, regarding the legal, financial and tax consequences of entering into the transaction contemplated by this Secured Promissory Note prior to executing any document in connection therewith.

**The remaining space on this page is intentionally left blank**

# LUPKIN PLLC

80 Broad Street, Suite 1301
New York, NY 10004

———

Tel: (646) 367-2771
Fax: (646) 219-4870
www.lupkinpllc.com

August 2, 2019

**VIA EMAIL**

Scott Levenson, Esq.
Levenson Law Group
levensonlawgroup@gmail.com

**Re:**   ***AF Trucking Inc. d/b/a AF Trucking and Yida Falkowitz v. Business Financial
Services, Inc. d/b/a BFS Capital and Axos Bank**, Index No. EF002854-2019*

Dear Mr. Levenson:

This firm represents Business Financial Services, Inc. ("BFS") and Axos Bank ("Axos"),
the defendants named in the above-referenced action. I have attempted to reach you several
times without success. Earlier today, your paralegal advised me that you would "probably"
respond to my calls and emails "sometime next week".

The complaint in this action ("Complaint") is replete with false statements of fact. For
example, it repeatedly alleges that the parties entered into a "merchant cash advance
agreement", which supposedly is attached to the Complaint as Exhibit A. *See, e.g.,*
Complaint ¶¶ 5, 21-23, 29, 30, 35, 36, 41-76. Exhibit A is a promissory note (the "Note"),
not a "merchant cash advance agreement". The Complaint also contains at least 17
supposed quotes from the parties' agreement, none of which appears in the Note. *See, e.g.,
id.* ¶¶ 12, 21, 22, 44, 45, 48, 59, 60, 62-66, 68, 71, 73, 74. Other than on the caption page,
the Complaint itself does not mention either BFS or Axos—the putative defendants in this
case. Instead, it refers to an entity called "Cash Advance Funders". *See id.* ¶ 21.

Evidently, your firm took a complaint directed at a third party, based on an agreement or
agreements that are entirely different from and unrelated to the Note, and added my clients'
names to the top. Such conduct is a gross violation of professional ethics and, *inter alia*,
Part 130 of the Rules of the Chief Administrative Judge.

Even if the Complaint were not wholly frivolous, no action between your clients and mine
is properly brought in state court because the Note contains a broad arbitration clause. *See*
Exhibit A to Complaint § 21 ("Any and all disputes, claims or controversies by any party
hereto (including any Guarantor), arising out of or in connection with this Agreement or
the interactions of the parties with each other, no matter how described, pleaded or styled,

Scott Levenson, Esq.
August 2, 2019
Page 2 of 2

including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration.").

If you do not immediately withdraw the Complaint and dismiss this case and we are forced to take further steps to defend this action—including but not limited to the preparation of a motion to dismiss and/or to compel arbitration—we will seek appropriate sanctions.

Sincerely,

Michael B. Smith

4812-2152-8478, v. 1

| From: | Levenson Law |
|---|---|
| To: | Michael Smith |
| Subject: | Re: AF Trucking et al. v. Business Financial Services, Inc. et al. |
| Date: | Sunday, August 4, 2019 5:55:28 PM |
| Attachments: | Complaint AF Trucking V BFS Capital.pdf |

Thank you for the update. I was out of the office all of last week. I just reviewed your correspondence.

1. To address the part where the Complaint discusses Merchant Cash Advances, it is our sincerest apology. Attached please find an Amended Complaint as per CPLR 3025. This Complaint will go out for service immediately. Thank you so much for bringing that to my attention.

2. As part of the arbitration provision, the underlying agreement states as follows: "However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision"

Once again, thank you.

Scott C. Levenson, Esq.
9 North Mill Street
Nyack, NY 10960
347.352.2470

On Fri, Aug 2, 2019 at 4:33 PM Michael Smith <msmith@lupkinpllc.com> wrote:

> Please see the attached correspondence.
>
>
> **Michael B. Smith**
>
> Lupkin PLLC
>
> 80 Broad Street, Suite 1301
>
> New York, NY 10004
>
> Tel: (646) 367-2776
>
> Fax: (646) 219-4870
>
> Email: msmith@lupkinpllc.com

--

Levenson Law Group

FILED: ORANGE COUNTY CLERK 08/15/2019 12:05 PM
NYSCEF DOC. NO. 1   Case 7:19-cv-08149-CS   Document 1-5   Filed 08/30/19   Page 46 of 59

INDEX NO. EF002854-2019
RECEIVED NYSCEF: 08/15/2019

CONFIDENTIALITY NOTICE: UNAUTHORIZED INTERCEPTION IS PROHIBITED BY
FEDERAL LAW [Electronic Communication Privacy Act of 1986, 18 U. S. C. 2701(a) and
2702(a)]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-----------------------------------------------------------------X
AF TRUCKING INC d/b/a AF TRUCKING. and
YIDA FALKOWITZ,

                    Index No. _____

                  Plaintiffs,

 -against-

BUSINESS FINANCIAL SERVICES, INC. dba
BFS CAPITAL and AXOS BANK

                  Defendants.
-----------------------------------------------------------------X

**AMENDED COMPLAINT FOR
DECLARATORY AND
INJUCTIVE RELIEF**

**TO THE SUPREME COURT OF THE STATE OF NEW YORK:**

Plaintiffs, AF TRUCKING INC. and YIDA FALKOWITZ, by and through their attorneys,

SCOTT LEVENSON, ESQ., as and for their Complaint for Declaratory Relief against Defendants,

allege and states as follows:

## THE PARTIES

1. Plaintiff, AF Trucking, Inc, (Plaintiff AF), is now, and at all times relevant hereto has

    been, a New York Corporation with a principal place of business at 3 Volova Rd., Unit

    302, Monroe, NY 10950.

2. Plaintiff, Yida Falkowitz, (Plaintiff Falkowitz) is an individual who maintains a place of

    business at 3 Volova Rd., Unit 302, Monroe, NY 10950.

3. Defendant, BUSINESS FINANCIAL SERVICES, INC. ("BFS") is upon information and

    belief, a valid corporation with a principal place of business at 3301 N. University Drive,

    Suite 300, Coral Springs, Florida, 33065

4. Defendant, Axos Bank ("Axos"), is upon information and belief, a valid corporation with

    a principal place of business at 4350 La Jolla Village Dr, Suite 140 San Diego, CA

## FACTUAL BACKGROUND

5. Plaintiff and Defendants entered into a Plaintiff Agreement on or about March 7, 2019 and attached hereto as Exhibit "A.".

6. On page 3 and attached hereto separately as Exhibit "B." Plaintiff agreement is titled "Secured Promissory Note" ("SPN").

7. The Agreement provides the loans as follows: Principal Amount: $70,100.00; Repayment Amount: $98,841.00; Processing Fee: $475.00; Origination Fee $1,051.50; Payment Frequency: Daily; Payment Amount: $393.00; **Factor Rate: 1.41.**

8. Defendants' have demanded payment in full according to the terms of the Agreement from the Plaintiffs.

9. Plaintiff has made said payments up and until its decision to file this Complaint.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT

### Declaratory Judgment

10. Plaintiff repeats and realleges all allegations of the Complaint as if set forth at length herein.

11. " 'The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed'. (CPLR 3001)" Long Island Lighting Company v. Allianz Underwriters Insurance Company, 35 A.D.3d 253 (2006)

12. The terms of the underlying agreement have an interest rate that exceeds 25%.

13. N.Y. Gen. Oblig. Law § 5-511 provides that usurious contracts are void.

14. **A loan from and to a corporation with an interest rate that exceeds 25% constitutes criminal usury under New York law.**

15. Corporations, generally the antithesis of desperately poor people, are ordinarily barred from asserting a usury defense; **Nevertheless, the New York criminal usury statute, unlike the civil statute barring loans of interest exceeding 16%, does apply to loans made to corporations.** Hillair Capital Investments, L.P. v. Integrated Freight Corp., 2013, 963 F.Supp.2d 336. Under New York law, [General Obligations Law, § 5-521] corporation is not allowed to interpose defense of usury, **except criminal usury,** in any action. In re McFarlin's, Inc., 1985, 49 B.R. 550. Usurious loan agreement with effective interest rate of 26.14% was void ab initio. Fareri v. Rain's Intern. Ltd. (2 Dept. 1992) 187 A.D.2d 481, 589 N.Y.S.2d 579.

16. **As such the Agreement attached hereto constitutes criminal usury and is void ab initio.**

17. "The 'present judicial interpretation' the amendment intended to reflect was the interpretation we affirmed in *Curtiss v Teller* (157 App Div 804, *affd* 217 N.Y. 649,*supra*), namely, that a usurious transaction is void *ab initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan (*see*, *id.*, p 817). Consequently, although defendants need not return the lawful interest plaintiff has already paid, they cannot recover either the money loaned or the interest remaining due in this transaction." *Szerdahelyi v. Harris*, 67 NY 2nd 42, 50-51 (1986)

18. As stated immediately above, the Defendant should not be able to "recover either the money loaned or the interest remaining due in this transaction." *Id.*

19. "When a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." *Id.*

20. With respect to any loan or forbearance other than certain residential mortgage loans, the term 'interest,' for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); *see* N.Y. Gen. Oblig. Law § 5-501(2).

21. New York State Penal Law §§ 190.40 and 190.42 prohibit loans with interest exceeding twenty- five percent (25%) per year. Violating those proscriptions are class E and C felonies, respectively.

22. Defendant at all pertinent times, continuing through the present, engaged in interstate commerce by making loans, including those which are the subject of this action, to entities in various states, and collecting or attempting to collect upon those loans.

23. DEFENDANT is in the business of making and collecting usurious loans because lending at interest rates exceeding twenty-five percent (25%) per year (in this matter the loans and broker fees exceed an annual rate of Approx 50%, and trying to enforce those agreements, is its trade.

24. Each form loan was prepared exclusively by the Defendants and not by the Plaintiffs.

25. Plaintiff entered into the loans while unrepresented by counsel.

26. The Loan Agreements' Terms intentionally mask that a Plaintiff agreement/loan is a usurious loan, and the Agreements among other things, do not state an interest rate on the loan documents.

27. The business, and its principal who has made and delivered a personal guaranty, are the ones exclusively bearing a business failure risk.

28. Defendants required a personal guaranty from Plaintiffs and a security agreement creating a security interest in all of the corporate plaintiffs' assets, in order to secure loan repayment.

29. Under no circumstances could a borrower rightfully be relieved of that repayment obligation pursuant to the terms of a DEFENDANT Loan agreement.

30. Among other things, because commissions, origination fees, and similar charges count towards usury, under each of its "agreements" DEFENDANT in fact is guaranteed interest exceeding 50% upon full repayment.

31. **DEFENDANT's Intentionally Made Loans That It Knows is Usurious. Defendants admit as much on the bottom left corner of the Secured Promissory Note (Exhibit "B.") and I quote:**

> **Higher Cost Loan**
>
> **"This loan is a higher cost loan than loans which may be available through other sources. Before signing you should fully consider all costs and fees associated with this loan."**

32. The security agreement, among other things, secures a Plaintiff's payment obligations to DEFENDANT.

33. "When a party contemplates taking certain action a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures.  In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly. That is the theory of the declaratory judgment action authorized by CPLR 3001." *New York Public Interest Research Group v Carey*, 42 N.Y.2d 527, 529-530 (1977)

34. Plaintiff has a secured promissory note and its loan is deemed financially secured by the personal assets of the borrower and AF Trucking, Inc.

35. Although a corporation is generally prohibited from interposing the defense of usury in an action**, this prohibition is not applicable to any action where the corporation interposes a defense of criminal usury under Penal Law**.  Transmedia Restaurant Co., Inc. v. 33 E. 61st Street Restaurant Corp., 2000, 184 Misc.2d 706, 710 N.Y.S.2d 756.

**WHEREFORE**, Plaintiff demands declaratory judgment against Defendant:

A. Determing that the agreement along with any other documents signed by Plaintiff are deemed usurious on its face and be deemed void barring Defendant from further collection of any outstanding debt; and

B. Preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the agreement and or documents signed until this matter is decided by this court in its entirety; and

C. Alternatively, preliminarily and permanently enjoin Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from collecting on any "judgements" should they be granted to Defendant in any other court, until this matter is further adjudicated; and

D. Award Plaintiff's their costs and reasonable attorneys' fees in this action; and

E. This court retain jurisdiction over this matter for purposes of ensuring Defendant's compliance with the Court's order; and

F. Granting Plaintiff such other relief as this Court may deem just and proper.

Dated:   Nyack, New York
         August 4, 2019

                                   LEVENSON LAW GROUP

                                   _/s/ Scott Levenson_____
                                   By:  Scott Levenson, Esq.
                                   Attorney for Plaintiff
                                   9 North Mill Street
                                   Nyack, NY  10960
                                   (347) 352-2470
                                   Levensonlawgroup@gmail.com

| From: | Michael Smith |
|---|---|
| To: | Levenson Law |
| Subject: | RE: AF Trucking et al. v. Business Financial Services, Inc. et al. |
| Date: | Monday, August 5, 2019 11:41:10 AM |

Scott,

1. Thank you for clarifying the complaint. We will address the remaining factual and legal defects in that pleading, if necessary, at the appropriate time.

2. Your quotation from the arbitration agreement below is incomplete. The entire sentence reads: "However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (*as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole*)." Promissory Note § 21 (emphasis added).

   Plaintiffs have not raised any challenge to the arbitration provision specifically; rather, they have challenged the validity of the entire Promissory Note—an issue which must be arbitrated. *See Monarch Consulting, Inc. v. National Union Fire Insurance Co. of Pittsburg*, 26 NY3d 659, 675-676 (2016) ([U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the Federal Arbitration Act] and must enforce it...leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

   Unless you have a valid challenge to the enforceability *of the arbitration clause* **per se**, your claim must be submitted to arbitration, not to the court. Please either identify such a specific challenge or dismiss this action (without prejudice to Plaintiffs' right to have the issue determined via arbitration).

Finally, I understand from my client that a settlement offer has been made. Before either side spends too much more time and money on these issues, we should discuss whether this dispute can be resolved without further litigation.

I am available to speak this afternoon at 4pm or tomorrow at 11am. If neither of these times suits you, please suggest alternative times and I will do my best to work with your schedule.

**Michael B. Smith**
Lupkin PLLC
Tel: (646) 367-2776

**From:** Levenson Law <levensonlawgroup@gmail.com>
**Sent:** Sunday, August 4, 2019 5:55 PM
**To:** Michael Smith <msmith@lupkinpllc.com>
**Subject:** Re: AF Trucking et al. v. Business Financial Services, Inc. et al.

Thank you for the update. I was out of the office all of last week. I just reviewed your

correspondence.

1. To address the part where the Complaint discusses Merchant Cash Advances, it is our sincerest apology. Attached please find an Amended Complaint as per CPLR 3025. This Complaint will go out for service immediately. Thank you so much for bringing that to my attention.

2. As part of the arbitration provision, the underlying agreement states as follows:
"However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision"

Once again, thank you.

Scott C. Levenson, Esq.
9 North Mill Street
Nyack, NY 10960
347.352.2470

On Fri, Aug 2, 2019 at 4:33 PM Michael Smith <msmith@lupkinpllc.com> wrote:

> Please see the attached correspondence.
>
> **Michael B. Smith**
> Lupkin PLLC
> 80 Broad Street, Suite 1301
> New York, NY 10004
> Tel: (646) 367-2776
> Fax: (646) 219-4870
> Email: msmith@lupkinpllc.com

--

# Levenson Law  Group

CONFIDENTIALITY NOTICE: UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW
[Electronic Communication Privacy Act of 1986, 18 U. S. C. 2701(a) and 2702(a)]

| | |
|---|---|
| **From:** | Michael Smith |
| **To:** | levensonlawgroup@gmail.com |
| **Cc:** | Dominic Sonkowsky |
| **Subject:** | AF Trucking v. BFS Capital, Index No. EF002854-2019 |
| **Date:** | Wednesday, August 14, 2019 2:34:28 PM |

Scott,

Be advised that Defendants Business Financial Services, Inc. and Axos Bank will be moving to stay the above-referenced matter, to compel arbitration of all claims therein, and for an award of sanctions against Plaintiffs. I will be sending separately a stipulation staying all other proceedings until after that motion is decided. If you do not return a signed copy of that stipulation by 5pm today, we will seek an interim stay from the court by order to show cause presented tomorrow, August 15, 2019, at 2:30 p.m., on the third floor of the courthouse at 285 Main Street, Goshen, New York 10924.

Sincerely,

**Michael B. Smith**

Lupkin PLLC

80 Broad Street, Suite 1301
New York, NY 10004
Tel: (646) 367-2776
Fax: (646) 219-4870
Email: msmith@lupkinpllc.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

AF TRUCKING INC d/b/a AF TRUCKING
and YIDA FALKOWITZ,

                    Plaintiffs,

    -against-

BUSINESS FINANCIAL SERVICES, INC.
d/b/a BFS CAPITAL and AXOS BANK,

                  Defendants.

Index No. EF002854-2019

**PART 130 CERTIFICATION**

I hereby certify, pursuant to 22 NYCRR § 130-1.1a(b) that, to the best of my knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances, the

presentation of the attached papers or the contentions therein are not frivolous as defined in 22

NYCRR § 130-1.1(c).

Dated:    New York, New York
            August 15, 2019

                       **LUPKIN PLLC**

By: _____
              Michael B. Smith

            80 Broad Street, Suite 1301
            New York, NY 10004
            Tel: (646) 367-2771
            Fax: (646) 219-4870
            jlupkin@lupkinpllc.com

            *Counsel for Defendants*

4818-1710-3008, v. 1

1

**REQUEST FOR JUDICIAL INTERVENTION**

UCS-840
(rev. 07/29/2019)

SUPREME _____ COURT, COUNTY OF ORANGE

Index No: __EF002854-2019__    Date Index Issued: __04/11/2019__

| | For Court Use Only: |
|---|---|
| | ____ IAS Entry Date |

**CAPTION** — Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

AF Trucking Inc. d/b/a AF Trucking, Yida Falkowitz

Plaintiff(s)/Petitioner(s)    ____ Judge Assigned

-against-

# Business Financial Services, Inc. d/b/a BFS Capital, Axos Bank

____ RJI Filed Date ____

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING** — Check only one box and specify where indicated.

**COMMERCIAL**
- O  Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ◉  Contract
- O  Insurance (where insurance company is a party, except arbitration)
- O  UCC (includes sales and negotiable instruments)
- O  Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY**    Specify how many properties the application includes: ___
- O  Condemnation
- O  Mortgage Foreclosure (specify):  O Residential  O Commercial
  Property Address: _____
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- O  Tax Certiorari
- O  Tax Foreclosure
- O  Other Real Property (specify): _____

**OTHER MATTERS**
- O  Certificate of Incorporation/Dissolution    [see NOTE in COMMERCIAL section]
- O  Emergency Medical Treatment
- O  Habeas Corpus
- O  Local Court Appeal
- O  Mechanic's Lien
- O  Name Change
- O  Pistol Permit Revocation Hearing
- O  Sale or Finance of Religious/Not-for-Profit Property
- O  Other (specify): _____

**MATRIMONIAL**
- O  Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- O  Asbestos
- O  Child Victims Act
- O  Environmental (specify): _____
- O  Medical, Dental or Podiatric Malpractice
- O  Motor Vehicle
- O  Products Liability (specify): _____
- O  Other Negligence (specify): _____
- O  Other Professional Malpractice (specify): _____
- O  Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- O  CPLR Article 75 (Arbitration) [see NOTE in COMMERCIAL section]
- O  CPLR Article 78 (Body or Officer)
- O  Election Law
- O  Extreme Risk Protective Order
- O  MHL Article 9.60 (Kendra's Law)
- O  MHL Article 10 (Sex Offender Confinement-Initial)
- O  MHL Article 10 (Sex Offender Confinement-Review)
- O  MHL Article 81 (Guardianship)
- O  Other Mental Hygiene (specify): _____
- O  Other Special Proceeding (specify): _____

**STATUS OF ACTION OR PROCEEDING** — Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ◉ | O | If yes, date filed: __04/11/2019__ |
| Has a summons and complaint or summons with notice been served? | ◉ | O | If yes, date served: __07/31/2019__ |
| Is this action/proceeding being filed post-judgment? | O | ◉ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION** — Check one box only and enter additional information where indicated.

- O  Infant's Compromise
- O  Extreme Risk Protective Order Application
- O  Note of Issue/Certificate of Readiness
- O  Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- O  Notice of Motion    Relief Requested: _____    Return Date: _____
- O  Notice of Petition    Relief Requested: _____    Return Date: _____
- ◉  Order to Show Cause    Relief Requested: __Compel Arbitration__    Return Date: _____
- O  Other Ex Parte Application    Relief Requested: _____
- O  Poor Person Application
- O  Request for Preliminary Conference
- O  Residential Mortgage Foreclosure Settlement Conference
- O  Writ of Habeas Corpus
- O  Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A). | | | | |
|---|---|---|---|---|---|
| Case Title | Index/Case Number | Court | | Judge (if assigned) | Relationship to instant case |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A). | | |
|---|---|---|---|---|
| Un-Rep | Parties List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined For each defendant, indicate if issue has been joined. | Insurance Carriers For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: AF Trucking, Inc. Role(s): Plaintiff | SCOTT LEVENSON, LEVENSON LAW, 231 Oakdene Ave, Cliffside Park, NJ 07010, stevensonesq@gmail.com | ○ YES  ◉ NO | |
| ☐ | Name: Falkowitz, Yida Role(s): Plaintiff | SCOTT LEVENSON, LEVENSON LAW, 231 Oakdene Ave, Cliffside Park, NJ 07010, stevensonesq@gmail.com | ○ YES  ◉ NO | |
| ☐ | Name: Business Financial Services, Inc. Role(s): Defendant | MICHAEL SMITH, ALupkin PLLC, 80 Broad Street Suite 1301, New York, NY 10004, (646) 367-2776, msmith@lupkinpllc.com | ○ YES  ◉ NO | |
| ☐ | Name: Axos Bank Role(s): Defendant | MICHAEL SMITH, ALupkin PLLC, 80 Broad Street Suite 1301, New York, NY 10004, (646) 367-2776, msmith@lupkinpllc.com | ○ YES  ◉ NO | |
| ☐ | Name: Role(s): | | ○ YES  ◉ NO | |
| ☐ | Name: Role(s): | | ○ YES  ◉ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |
| ☐ | Name: Role(s): | | ○ YES  ○ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: _____08/15/2019_____

_Michael B Smith / w/p_

Signature

_____3985314_____
Attorney Registration Number

MICHAEL B SMITH
Print Name