UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AF TRUCKING INC., d/b/a AF TRUCKING,
and YIDA FALKOWITZ,

                             Plaintiffs,

      - against -

BUSINESS FINANCIAL SERVICES, INC.,
d/b/a BFS CAPITAL, and AXOS BANK,

                             Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-8149 (CS)

Appearances:
Scott Levenson
Levenson Law Group
Nyack, New York
*Counsel for Plaintiffs*

Michael B. Smith
Lupkin PLLC
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion to compel arbitration and stay proceedings of Defendants

Business Financial Services, Inc., d/b/a BFS Capital, and Axos Bank (collectively,

"Defendants"), (Doc. 8), and the cross-motion to remand and in the alternative for summary

judgment of Plaintiffs AF Trucking Inc., d/b/a/ AF Trucking, and Yida Falkowitz (collectively,

"Plaintiffs"), (Doc. 15).

I.     **BACKGROUND**

      The following facts are taken from Plaintiffs' Complaint and the exhibits attached

thereto. (Doc. 1-1 ("Compl.").)

A.    **Facts**

Plaintiff AF Trucking Inc., d/b/a AF Trucking, is a New York corporation with its

principal place of business in New York.  (*Id.* ¶ 1.)  Plaintiff Yida Falkowitz is an individual

"who maintains a place of business" in New York.  (*Id.* ¶ 2.)  Defendant Business Financial

Services, Inc., d/b/a BFS Capital ("BFS Capital"), is a North Carolina corporation with its

principal place of business in Florida, and Defendant Axos Bank is a federally chartered savings

bank with its principal place of business in California.  (*Id.* ¶¶ 3-4; Doc. 1 ("Notice of Removal")

¶¶ 7-8.)

Plaintiffs and Defendants entered into an agreement on or about March 7, 2019.  (Compl.

¶ 5; *id.* Ex. B ("Agreement")[1].)[2]  Plaintiffs allege that the Agreement is a usurious loan, under

---

[1] The documents attached to Plaintiffs' Complaint are not separated by exhibit markers. Paragraph 5 of the Complaint states that Plaintiffs and Defendants entered into a "Merchant Agreement" which is attached as Exhibit A, (Compl. ¶ 5), but the first two pages attached to the Complaint are a cover letter and a general authorization form.  Paragraph 6 of the Complaint reads as follows: "On page 3 and attached hereto separately as Exhibit 'B,' Plaintiff [*sic*] agreement is titled 'Secured Promissory Note' ('SPN')."  (Compl. ¶ 6.)  Beginning at the third pages of the attachments is a document entitled "Secured Promissory Note," and it contains the terms the parties dispute.  Accordingly, the Court is considering that document, which spans pages 16 through 24 generated by the Court's Electronic Case Filing System, to be the "Agreement" at issue.

[2] Plaintiffs' Complaint alleges facts that seem to refer to a different agreement with a non-Defendant party.  For example, not only do Plaintiffs allege that they entered into a "Merchant Agreement" with Defendants, when what they provide is a promissory note, but Plaintiffs make allegations against an entity called "Cash Advance Funders," (*id.* ¶ 21), which is not a party to this case; claim that the loan papers "were prepared exclusively by the Plaintiff," (*id.* ¶ 26), which seems inconceivable; and refer repeatedly to an undefined party called "Merchants," (*e.g*, *id.* ¶¶ 26, 28, 38).  Such sloppy pleading is inexcusable.  In any event, where a plaintiff relies on a document attached to the Complaint and that document contradicts an alleged fact, the document controls.  *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order) ("[T]he court must generally accept as true all of the factual assertions in the complaint.  However, there is a narrow exception to this rule for factual assertions that are contradicted . . . by documents upon which the pleadings rely . . . .") (citation omitted). Accordingly, I rely on the terms contained in the promissory note attached to the Complaint.

which Defendants charge an interest rate that exceeds 25 percent.  (Compl. ¶¶ 12-13.)  Plaintiffs

therefore seek a declaration voiding the Agreement *ab initio*.  (*See id.* ¶¶ 15, 77.)

The Agreement contains an "Arbitration Provision," which provides:

> Any and all disputes, claims or controversies by any party hereto (including any
> Guarantor), arising out of or in connection with this Agreement or the interactions
> of the parties with each other, no matter how described, pleaded or styled, including
> claims arising in tort, in equity and/or in contract, shall be decided exclusively and
> finally by binding individual (not class or multi-party) arbitration.  However, a
> court shall decide all disputes about the validity, enforceability, coverage or scope
> of this Arbitration Provision (as opposed to any questions about the validity,
> enforceability, coverage or scope of this Agreement as a whole).

(Agreement § 21(a).)

**B.    Procedural History**

On April 11, 2019, Plaintiffs filed this action in the Supreme Court of the State of New

York, County of Orange.  (Compl.)  On August 15, 2019, Defendants moved by order to show

cause to stay the state court action and compel arbitration.  (Doc. 1-5.)  The state court signed the

order to show cause and ordered the parties to appear for a conference on August 26, 2019.

(Doc. 1-6.)  On August 26, 2019, the state court entered a modified order to show cause, setting a

briefing schedule for Defendants' motion, under which Plaintiffs' opposition would be due

September 26, 2019, and Defendants' reply would be due October 10, 2019.  (Doc. 1-7.)

On August 30, 2019, before the briefs came due in the state court case, Defendants

removed to this Court.  (Notice of Removal.)  Defendants removed pursuant to 28 U.S.C. § 1332,

asserting that there was complete diversity and the amount in controversy exceeded $75,000.

(*Id.* ¶¶ 7-9.)

On September 6, 2019, Defendants moved to compel arbitration and filed a memorandum

of law in support.  (Doc. 9.)  On September 25, 2019, Plaintiffs filed their opposition to

Defendants' motion and cross-moved to remand the case or, in the alternative, for summary

judgment.  (Doc. 15-1 ("Ps' Mem.").)  Defendants filed a reply on their motion, (Doc. 16), and

an opposition to Plaintiffs' cross-motion, (Doc. 17 ("Ds' Opp.")).  Plaintiffs never filed a reply

on their motion.

## II.    LEGAL STANDARD

### A.    Motion to Remand

An action filed in state court may properly be removed by a defendant if "the district

courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Federal district

courts have original jurisdiction over cases "between . . . citizens of different states," where the

amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  "Diversity jurisdiction under

§ 1332(a) 'requires complete diversity between all plaintiffs and defendants.'"  *Wachtell, Lipton,*

*Rosen, & Katz v. CVR Energy, Inc.*, 18 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quoting

*Pampillonia v. RJR Nabisco Inc.*, 138 F.3d 459, 460 (2d Cir. 1998)).

As a general matter, removal jurisdiction must be "strictly construed," *Syngenta Crop*

*Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against

removability "out of respect for the limited jurisdiction of the federal courts and the rights of

states," *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d

Cir. 2007).  Therefore, "[a] party seeking removal bears the burden of showing that federal

jurisdiction is proper."  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir.

2011).

### B.    Motions to Compel Arbitration and for Summary Judgment

"In the context of motions to compel arbitration, . . . the court applies a standard similar

to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171,

175 (2d Cir. 2003).  Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Motion to Remand

#### 1.   Diversity of the Parties

It is undisputed that Plaintiffs are both citizens of New York. (Compl. ¶¶ 1-2.) In Defendants' notice of removal, they stated that BFS Capital is incorporated in North Carolina

and has its principal place of business in Florida, and that Axos Bank is a federally chartered savings association with its home office in California.  (Notice of Removal ¶¶ 7-8.)  Plaintiffs have not disputed Defendants' counsel's assertions.  Accordingly, Plaintiffs are both citizens of New York, Defendant BFS Capital is a citizen of North Carolina and Florida, and Axos Bank is a citizen of California,[3] meaning there is complete diversity among the parties.  And because the dispute is for more than $75,000, (Compl. ¶ 7), this Court has subject matter jurisdiction over the suit, and Defendants' removal was proper.

Plaintiffs seem to make two arguments that are based on misapplication and miscomprehension of the law.  First they argue that the Court should remand this case because Axos Bank has an office in New York.  (Ps' Mem. ¶ 20.)  But the existence of such an office would not make Axos Bank a citizen of New York, (*see* note 3 above), and therefore would not destroy diversity jurisdiction.  Next Plaintiffs argue that the Court has personal jurisdiction over Defendant Axos Bank because Axos Bank has minimum contacts with New York.  (*Id.* ¶ 21.)  This argument is particularly puzzling, because Axos Bank has not argued lack of personal jurisdiction, and even if it had, the analysis would be the same whether the case was in federal or state court.  In any event, whether there is diversity jurisdiction is a question of subject matter jurisdiction, not personal jurisdiction.  *See, e.g.*, *Frontier Ins. Co. v. MTN Owner Tr.*, 111 F. Supp. 2d 376, 379 (S.D.N.Y. 2000) ("[U]nless complete diversity exists between the parties, this

---

[3] "In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office."  12 U.S.C. § 1464(x).  To determine the location of the "home office," courts look to the savings association's charter.  *Silva v. Northfield Bancorp, Inc.*, No. 12-CV-555, 2012 WL 1884698, at *1 (E.D.N.Y. May 18, 2012).  Here, Axos Bank's federal savings association charter lists that its "home office" is in California.  (Doc. 18-1 at 4.)

Court lacks original subject matter jurisdiction, and the case was not properly removed.").  Thus, whether Axos has "minimum contacts" with New York is irrelevant to the remand inquiry.

### 2.    Allegations of Forum-Shopping

Plaintiffs also argue that Defendants' removal to this Court constitutes impermissible forum shopping, contending that Defendants removed this case only because they were unhappy with the state court judge for hearing Plaintiffs on August 26, 2019 before the appointed hour. (*See* Ps' Mem. ¶¶ 15-17.)  Even assuming that Plaintiffs were right that Defendants removed because they were unhappy with the state court judge, that does not provide a ground to remand this case to state court.  Plaintiffs provide no authority for the proposition that the Court must or should remand if removal was motivated by hopes of a more congenial forum.  To the contrary, every time a party removes a case from state to federal court, there is some aspect of forum shopping at play.

To support their argument that the case should be remanded, Plaintiffs cite to three cases, but all are inapposite.  First, Plaintiffs cite to *Hill v. Delta International Machinery Corp.*, in which the court explained that the one-year time limit under which defendants must remove if doing so based on diversity jurisdiction may be extended if "plaintiff acted tactically to avoid removal and the interests of justice favor removal."  386 F. Supp. 2d 427, 430-31 (S.D.N.Y. 2005) (internal quotation marks omitted).  The Court explained that "[t]he reasoning behind the extension – to prevent tactical behavior on the part of plaintiffs – accords with the general goal of preventing forum shopping that has been recognized repeatedly by the Supreme Court."  *Id.* at 431.  In that case, the defendants were arguing that it was plaintiff who was forum shopping – by fraudulently joining a party to avoid complete diversity – and thus the normal one-year limit should be extended.  *See id.* at 428.  The issues here are entirely different.  And, ultimately, the

*Hill* court found the forum-shopping argument unconvincing, did not extend the limitations period, and remanded the case. *Id.* at 432-33. The other two cases Plaintiffs cite, *Betts v. Atwood Equity Cooperative Exchange, Inc.*, No. 88-CV-4292, 1990 WL 92495, at \*1 (D. Kan. June 13, 1990), and *Williams Advanced Materials, Inc. v. Target Technology Co., LLC*, No. 03-CV-276, 2007 WL 2245886, at \*6 (W.D.N.Y. Aug. 1, 2007), are both cases in which a party sought a change of venue, a context in which plaintiff's choice of forum plays a role in the analysis. Plaintiffs have offered no explanation as to why those cases should apply here, and finding none myself, I disregard both of them. Plaintiffs have thus failed to support their assertion that the case should be remanded due to improper forum shopping.[4]

Accordingly, Defendants have carried their burden showing that federal jurisdiction is proper, and Plaintiffs have failed to offer any persuasive reason why the Court should remand the case, so Plaintiffs' motion to remand is denied.

### B.    Motion to Compel Arbitration

Arbitration clauses are subject to the Federal Arbitration Act ("FAA"). *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). "The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve . . . underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "The strong policy in favor of arbitration is even stronger where the arbitration clause itself is a broad clause that refers to arbitration of all disputes arising out of an agreement." *Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 514 (S.D.N.Y. 2001) (internal quotation marks omitted).

Section 3 of the FAA provides that:

---

[4] The Court's analysis on this point applies even if Defendants were indeed forum shopping, but there is no evidence that Defendants did anything improper by removing.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Section 4 of the FAA provides, in relevant part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Id.* § 4.

Here, Defendants move the Court to have Plaintiffs' claim referred to an arbitrator and the instant action stayed.  Defendants argue that Plaintiffs' action that seeks a declaration that the entire Agreement is void is covered by the Agreement's arbitration clause.  That clause provides:

> Any and all disputes, claims or controversies by any party hereto (including any Guarantor), arising out of or in connection with this Agreement or the interactions of the parties with each other, no matter how described, pleaded or styled, including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration.  However, a court shall decide all disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole).

(Agreement § 21.)  The clause plainly states that a claim that the "Agreement as a whole" is void is subject to arbitration, and exempts only disputes about the validity or enforceability of the arbitration provision itself.  It thus "clearly and unmistakably" delegates "disputes over contract validity to the arbitrator."  *Corpus Christi Indep. Sch. Dist. v. Amrisc, LLC*, No. 19-CV-301, 2019 WL 2051696, at *4 (E.D.N.Y. May 9, 2019).  Thus, under the parties' agreement,

Plaintiffs' claim falls squarely under the arbitration clause, and "such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration." *Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 26 N.Y.3d 659, 676 (2016) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)).  Plaintiffs here do not make any challenge to the delegation clause, and thus the Court must leave the determination of whether the contract as a whole is valid "to the arbitrator in the first instance."  *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 18 (2012) (*per curiam*).

Plaintiffs argue that the Court should "deny[] defendant's motion to compel arbitration pending a trial of the issues of whether the written agreements are usurious and invalid."  (Ps' Mem. ¶ 28 (quoting *Durst v. Abrash*, 253 N.Y.S.2d 351, 356 (App. Div. 1964), *aff'd*, 17 N.Y.2d 445 (1965)).)  In other words, relying on a fifty-five-year-old case, Plaintiffs argue that this Court should decide whether the contract was void *ab initio* before determining whether the arbitration clause can be enforced.  But this argument has been plainly rejected by the Supreme Court, which has held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator" where there is a valid arbitration clause not in dispute.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). Again, Plaintiffs have not alleged that the arbitration clause is invalid or unenforceable, and thus their claims belong in front of an arbitrator, not this Court.[5]

---

[5] Plaintiffs also cite to *United States v. Stein*, 452 F. Supp. 2d 230, 260 (S.D.N.Y. 2006), *vacated sub nom. Stein v. KPMG, LLP*, 486 F.3d 753 (2d Cir. 2007), to support their argument that this Court should decide whether the contract is valid before compelling arbitration.  But *Stein* does not help Plaintiffs here.  First, *Stein* was vacated on appeal.  Second, in *Stein*, the plaintiffs challenged the arbitration clause itself as void against public policy in the unique circumstances of that case, but here Plaintiffs have not challenged the arbitration clause and are instead challenging the enforceability of the entire agreement.

Accordingly, Defendants' motion to compel arbitration and stay the proceedings in this Court is granted, and Plaintiffs' summary judgment motion is denied.[6]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to compel arbitration and stay these proceedings is GRANTED, and Plaintiffs' motion for remand or summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 8, 15), and stay the case pending arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) ("[T]he Federal Arbitration Act requires a stay of proceedings when all claims are referred to arbitration and a stay requested.") (citation omitted). The parties are to provide a joint status letter within fourteen days of the conclusion of the arbitration.

**SO ORDERED.**

Dated: May 28, 2020
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[6] Defendants argue that "the substance of Plaintiffs' summary judgment motion relates to an entirely different set of facts and parties. . . .  [T]he motion appears to have been cut-and-pasted from an unrelated case involving a 'Factoring Agreement' whereby one party purchased a percentage of the other's accounts receivable." (Ds' Opp. at 4.)  This is at least in part correct. While Plaintiffs in their memorandum cite to a "Factor Rate of 1.41," (Ps' Mem. ¶ 47), which is part of the parties' Agreement, (Agreement at 16), Plaintiffs repeatedly quote and cite portions of the Agreement that are not actually present, (*see* Ps' Mem. ¶¶ 46, 51, 62, 79, 81).  That Plaintiffs thought they would be granted summary judgment after putting together such a lazy and careless brief is surprising, to say the least.  Further, even if Plaintiffs had gotten their allegations right, they rely on numerous "facts" for which they provide no evidentiary foundation. (*See, e.g.*, Compl. ¶¶ 41-42, 47.)  Their counsel must be aware that summary judgment is not awarded based on allegations in a complaint or brief.